WILLIAM R. ROBERTS *vs.* FRANCIS J. GEIS *and others.*

Where a lessee agrees to assign his lease, which contains a condition that the
landlord may re-enter in case of alienation, he impliedly agrees that he either
has obtained, or can and will obtain, such consent of his landlord as is necessary
to enable him to vest in the assignee the same estate which he has himself.

Whether, in such a case, the lease is only voidable at the option of the landlord,
or absolutely void upon a breach of the condition, is immaterial. To render
the transfer effectual so as to vest the assignee with the remainder of the term,
whether the latter knew of the covenant against an assignment or not, the land-
lord's consent is necessary, and in the absence of such consent being obtained,
the lessee cannot compel the assignee to complete the transfer and pay the con-
sideration.

SPECIAL TERM, *July*, 1869.

THIS action was brought to compel a specific performance
of an agreement entered into by the defendants to purchase, and
take an assignment of, a lease of certain premises of which the
plaintiff was the lessee.

The agreement provided that the defendants should take the
lease, subject to the conditions and restrictions contained in it.
One of the conditions contained in the lease was that if the
lessee should sell or assign the lease, the landlord might, at his
option, terminate the lease and re-enter. There was no pretense
of bad faith on the part of the plaintiff, or that the condition
was concealed from the knowledge of the defendants. The
latter, however, testified, that in examining the lease before the
execution of the agreement, they did not observe the provision
against alienation, and did not know of it until afterward.

*Frederick Smyth* and *Edgar S. Van Winkle*, for plaintiff.

*A. F. & W. H. Kircheis*, and *Jacob A. Gross*, for defend-
ants.

DALY, F. J.—In *Mason* v. *Corder* (7 Taunt. 9), the lease
contained a covenant not to assign without the lessor's consent

in writing.   The action was to recover damages from the defendants for the non-performance of an agreement to purchase the residue of the term of the lease, and it was held, that, to maintain the action, it was incumbent upon the plaintiff to show that he had done all that was requisite on his part, namely, that *he had obtained the lessor's consent in writing to the assignment.*

In *Lloyd* v. *Crispe* (5 Taunt. 250), there was a covenant in, the original lease that the lessee should not assign without the license of the lessor.   The plaintiff, with the, knowledge of the existence of this covenant, made an agreement with the lessee for the assignment of the lease, and paid upon it the sum of £50.   The lessor refused to give his consent, and the plaintiff brought an action against the lessee to recover back the £50. The defendant insisted that he had not contracted to obtain the lessor's consent to the assignment; that it was incumbent upon the plaintiff, who had full notice of this covenant in the lease, to procure the· consent; that as the defendant was willing to assign his lease if the plaintiff would accept it, and to receive the residue of the purchase-money, he had done all that he had contracted to perform, and that the plaintiff could not recover back the deposit.   Sir James Mansfield, upon the trial,, was of the opinion that the plaintiff, as he had *had all the covenants in the lease read over to him,* and was perfectly cognizant of the restriction against alienation, he had taken upon himself to obtain the landlord's consent, and the lessee had only agreed to part with his interest in the term, as far as he was able to do so. He accordingly directed a nonsuit.   But, upon a motion for a new trial, all the other judges thought otherwise.   They were of the opinion that the plaintiff, not being able to enjoy the premises, had paid the £50 for nothing.   That it was the lessee's business to obtain the landlord's consent and not the plaintiff's, and that he might recover his £50 back.   A new trial was therefore ordered.   In accordance with these decisions, it is laid down as the general rule, in Mr. Platt's very accurate treatise upon the Law of Covenants (p. 442), that the vendor of a lease containing such a covenant, and not the vendee, is bound to obtain the landlord's consent to the assignment.

These two decisions are decisive of the present case. The latter one is exactly in point, for the ground there taken is substantially the same as that which is relied upon by the plaintiff in this case.

It is suggested in the plaintiff's points, that there is a distinction between cases where the term is put an end to, and the lease becomes absolutely void by the breach of a condition or limitation contained in it, and cases where it is merely voidable; as where the covenant is that the landlord may re-enter, if the condition is broken, which is true (3 Co. 64. 1 Inst. 214, b); and it is, therefore, argued, that if, by the terms of the lease, an assignment without the landlord's consent would render it thereafter absolutely void, it is necessarily implied that the lessee will obtain the landlord's consent before making the assignment, for the reason that an assignment without it would wholly destroy the subject-matter, and nothing would pass to the assignee under it; but that, where the condition is that if the lease is assigned, it shall be at the landlord's option to put an end to the term, or to re-enter, the assignment may be good, for the landlord may never exercise his option, or he may waive the condition by accepting rent from the assignee. That, in accordance with this view, the two cases referred to are to be distinguished as cases where the lease became absolutely void by an assignment without the landlord's license or consent; but that, in the present case, it would be merely voidable at the landlord's option, which makes an essential difference, as in the one case there would be at least the possibility of something to assign, and in the other there would not be. But the decision in these cases was not founded upon any such distinction, nor is there anything in the report of the cases from which it could be inferred that the leases there would have become absolutely void, by a breach of the condition against assignment. On the contrary, in cases where the language of the condition was equally strong—even stronger— as where it contained an express provision that, upon the breach, the lease should be utterly void, and there was nothing expressed in respect to re-entry, or any other qualification, it has been held that a breach of the condition would not render

the lease void, but voidable merely at the landlord's option. In *Doe* v. *Bancks* (4 B. & Ald. 402), the condition was that if a certain period should elapse without the lessee performing what he had engaged to do, the lease should be deemed void to all intents and purposes; but C. J. Abbot said that, notwithstanding the words of the lease, it did not become absolutely void unless the landlord saw fit to make it so. In *Reed* v. *Farr* (6 Maule & S. 121), the language was equally strong, and the ruling was the same; and in *Roberts* v. *Dovey* (4 B. & Ad. 664), the license, on breach of a certain condition, was to cease, determine, and become utterly void, and of no effect. And yet it was held that it did not become void until the landlord had declared his option. To the same effect is the language of Lord Tenterden in *Arnsby* v. *Woodward* (6 B. & Cres. 519), and the case of *Malins* v. *Freeman* (4 Bing. N. C. 395), which was decided on a similar principle; to which it may be added, that, in accordance with these cases, the law is thus laid down in Archbold upon Landlord and Tenant (97): "Even although, by the terms of the proviso, the term is to cease, or to become void for the non-performance of the covenants, if the landlord do not avail himself of it, the term continues as before."

This will become even more apparent upon considering other provisions of the law in respect to enforcing forfeitures for the breach of covenants against assigning or underletting without the landlord's permission. "Covenants of this description," says Platt in his Treatise on Covenants (p. 406), "have always been construed by courts of law with the utmost jealousy, to prevent the restraint from going beyond the express stipulation." Thus, to enable the landlord to enforce a forfeiture for underletting or assigning without his consent, there must be a provision for a re-entry, or that the estate shall be void upon the breach of the condition; for, in the absence of a proviso for a re-entry, or what is equivalent to it, he would possess no such power. It would not be a good condition, but a mere covenant or agreement, for the breach of which his only remedy would be an action for damages (*Wilson* v. *Phillips*, 2 Bing. 13; 4 Cruise's Digest, p. 353, §§ 1, 3; Co. Lit. § 331;

Shep. Touchstone, 122; Platt on Covenants, 426; Archbold on Landlord and Tenant, p. 95).

, Now, in one of these two cases (*Lloyd* v. *Crispe*) there was a proviso for a re-entry, which shows that in that case the lease was voidable only at the option of the landlord; so that no such distinction as that which is relied upon by the plaintiff's counsel here could have affected the decision in that case. In the other (*Mason* v. *Corder*) it does not appear whether there was or was not a proviso for a re-entry, or that the lease should be void upon the breach of the covenant not to assign; nor is it material, for the case was decided expressly upon the authority of the previous case of *Lloyd* v. *Crispe*. The fact is, that both cases were decided upon this plain ground, that when a lessee agrees to assign his lease, an act, which, if done without his landlord's consent, would place it at once in the landlord's power to put an end to the lease, it is to be assumed that he either has, or can obtain, or engages to procure, his landlord's consent, which is necessary to enable him to vest in the assignee the same estate which he has himself, and which is what he engages by an assignment to transfer. By assigning the house, without the landlord's consent, he transfers the estate, charged with a breach of one of the conditions upon which it was to be enjoyed, which is very different from what he possessed himself, as it may then be divested, and the assignee deprived of all right and interest in it, at the landlord's pleasure. It is obvious, therefore, that to render the transfer effectual, whether the assignee knows of the covenant against assignment or not, that an assignment, duly executed, should be given, with the landlord's consent endorsed upon it, or otherwise expressed in writing for the assignee's security, and to vest in him what remains of the term.

The provision in the lease, as I recollect it, for I have not the instrument now before me, is that the term should expire at the option of the landlord, upon the premises being let, demised, underlet, assigned, or sold without his written consent. This is equivalent to a proviso for a re-entry, whether the words re-entry are or are not in the lease (Bacon's Abr., tion A, G, H; Shephard's Touchstone, 122). I unders

however, from the points of the plaintiff's counsel, that there is an express provision that the landlord may re-enter.

If the defendants should accept the assignment without the written consent of the landlord, and pay the amount agreed upon, they would hold simply at the landlord's pleasure. It is in evidence that the landlord, an heir who has succeeded to the estate since that lease was granted, has declared to one of the defendants that he would not give his consent, saying that the plaintiff had no right to assign, and that if they, the defendants, took possession, he would put them out. This, in the event of an assignment, he could undoubtedly do, and if this court should compel the defendants to accept the assignment, and the landlord should put his threat into execution, the defendants would be wholly without remedy. The landlord could re-enter for condition broken, and a court of equity could not relieve the defendants against a forfeiture thus incurred (*Wafer* v. *Mocato*, 9 Mod. 112; Eq. Ca. Ab. 58; *Hill* v. *Barclay*, 18 Ves. jr. 63; *Gregory* v. *Wilson*, 9 Hare, 683; *Baxter* v. *Lansing*, 7 Paige, 352; *Davis* v. *West*, 12 Ves. jr. 475; *Rolfe* v. *Harris*, reported in *Bracebridge* v. *Buckley*, 2 Price R. 200; *Skinner* v. *Dayton*, 2 Johns. C. R. 535; Platt on Covenants, 423, 429; Story's Equity Jur. § 1324). A court of equity will relieve against forfeiture incurred by accident or mistake, or where full compensation can be made, as for non-payment of rent, or where there is some rule by which to measure the damages, or where an assignment is made by executors after death of lessee, without the lessor's consent, for there it is an alienation by the act of God (*Seers* v. *Hind*, 1 Ves. jr. 295), but not where the assignment is voluntarily made by the lessee without the lessor's consent. This was held in *Wafer* v. *Mocato* (*supra*), by Lord Macclesfield more than a century ago, and has been uniformly adhered to since. The reason is that the court cannot estimate the damage. There is no rule to go by, for it cannot say whether the lessor will gain or lose by the assignment. It is sufficient that he insists upon his covenant, and no one has a right to put him in a different situation. The law ascertains the contract, defines the rights of the contracting parties, and a court of equity will not interfere (Platt on Covenants, 429, 430).

This action is brought to compel the defendants to accept the assignment, irrespective of the landlord's consent, or for damages equivalent to the amount which the defendants agreed to pay for the assignment. No court of equity would compel the defendants to take a leasehold estate, pay the consideration therefor, when, by the very act of assignment, the landlord would have the right to re-enter and deprive them of the estate.

This may be a hard case for the plaintiff, who appears to have acted throughout in good faith, and has sold out his stock of goods at great loss and sacrifice, and closed up his business, that he might be enabled to deliver up to the defendants the possession of the store at the time agreed upon. He did nothing to mislead the defendants, or to draw them into the contract by any act or countenance. He submitted his lease for their examination, and requested them to read it over. They had it in their possession for more than an hour, and when they intimated their readiness to enter into the agreement, he suggested that they were rather quick; that they had better take time, and that he would give them the refusal. On their part, they testified that they read the lease only in part; that they read it only to the extent of seeing what restrictions were in it, and did not see the provision against alienation, which was in the printed part of the instrument. The agreement signed was that they would take the lease subject to the restrictions contained in it. There were many restrictions, chiefly declaratory of purposes for which the premises should not be used, and it was to these restrictions that the defendants gave their attention. They were not aware of this condition requiring the landlord's consent to the assignment, and if they had been, it would have made no difference, for they would then have had the right to assume that the plaintiff had, or could obtain, the landlord's consent. The plaintiff admits that he knew there was such a provision. He consequently knew that he had no absolute right to assign it without the landlord's consent, or if he did, that a forfeiture of the term would be incurred. This was a very grave matter. Did he expect that the defendants were to obtain the landlord's consent, or that they were to take the lease subject to the risk of being

deprived of it by the landlord? He said nothing to them on the subject, nor they to him, for, as they testify, they did not know what he did—that there was a provision in the lease. The plaintiff agreed to assign the lease subject to the restrictions contained in it, and the defendants agreed to take it upon these terms, and pay a very considerable sum of money for it. Did this embrace the restriction that it was not to be assigned without the landlord's consent, except at the risk of the forfeiture of the lease? I think not. All the other restrictions were consistent with the enjoyment of the estate by the defendants for the remainder of the term, and depended for their fulfillment, after the assignment, exclusively upon their acts. But this did not. This restriction was violated by the very act of assignment itself. It was not, consequently, in the power of the defendants to observe and keep it. It was no longer a restriction except in the consequence that followed its violation, and over these the defendants had no power or control. They could not, therefore, be said to take the estate subject to a restriction, which would be broken by the very act which vested the estate in them. Even if they had known, or were, under the circumstances, chargeable with a knowledge of this provision, it would not follow that they had agreed to take the assignment at the risk of being divested of the estate, or upon the condition that they were to obtain, or take the risk of obtaining, the landlord's consent. The more reasonable interpretation is that it is an act essential to the assignment. That it is necessary to a full and complete transfer of the residue of the term, which, without it, would be of uncertain duration, and that, consequently, it is not for the one who is to receive, but for the one who is to make, the assignment, to obtain and possess all that is requisite to enable him to do it.

It is urged, in conclusion, that the acts of the defendants, after they knew of the existence of this covenant against alienation, amounted to a waiver of that objection within the meaning of a rule which has frequently been enforced in courts of equity. In certain cases, courts of equity have held that a party shall not discharge himself from the performance of a contract by falling back upon an objection when his acts, after

he had full knowledge of the objection, show that he attached no importance to it, but acted in full recognition of his obligations under the contract, so as to indicate clearly that he had waived the objection. Thus, in *Fordyce* v. *Ford* (4 Brown C. C. 494), the premises were sold at auction as a freehold estate into a leasehold adjoining, without its appearing how much of the estate was freehold and how much leasehold. Upon investigation it appeared that of the seventy acres sold, sixty-two were leasehold and only eight freehold, but the defendant upon being advised of the fact made no objection upon that ground, but suffered the general investigation as to the title to go on, the deeds to be made out and delivered, involving a considerable lapse of time and then he refused to perform. The court held that, under such circumstances, he had waived the objection, and could not, upon the ground of the objection, be released from the performance of the contract; and in *Burnell* v. *Brown* (1 Jac. & Walk. 168), the purchaser of an estate, after he knew of the reservation of a right of shooting, hunting, and trouting upon the estate, which had not been mentioned at the auction sale, was, at his own request, let into the possession, and it was held that he had waived this objection and could not afterward fall back upon it to discharge himself from the contract.

In the present case, the defendants testify that they knew nothing of this covenant against alienation, and of the necessity of obtaining the landlord's consent, until the lawyer informed them of it. When applied to to complete the contract, they objected, and said they wanted to see the lawyer, and suggested that the plaintiff and his counsel should see their lawyer. They accordingly did see the defendants' lawyer, who said he wanted time to investigate, and they gave him a few days, the plaintiff's counsel taking the ground that there was no clause in the lease which prevented the plaintiff from disposing of it. It appears that the defendants went to the owner to get an extension of the lease which he refused to give. They said that they had purchased the lease of the plaintiff, and asked if he had the right to assign it, and the owner said no, and that if they took possession, he would put them out. They told the plaintiff that

they were ready to complete the contract on their part but that the landlord refused to consent to the assignment. It also appeared that they put up bills upon the store to rent, and seem to have been in doubt as to what they were to do, and considerable delay occurred in which several interviews were had with the owner, who came to the store with some of the defendants and said to the plaintiff, " We object." On or before the 19th of February some of the defendants called upon the plaintiff, and said, " we suppose you know that the bank is not going to take the store." The plaintiff said he had heard something of the kind, and asked if they had seen the landlord, and if he would give them the extension, and one of them said no, and applied to the owner some derogatory term, but said they were going to carry out their contract, and spoke about letting the store, and asked what they ought to get for it. The plaintiff told them $5,000 a year, and they put up bills to let. After that, the plaintiff had another interview with them about the 20th of February, and they wanted to make terms as to the time of payment, saying that they had been purchasing real estate and were short. One of the defendants testifies that they found out about the *last* day of February, that the plaintiff had no right to assign without the owner's consent, and, so far as I can gather from the evidence, it was at this time or after it that they interposed an objection upon the ground that the tender of the assignment was made, when they objected to take it, referring to their lawyer, and when they advised the plaintiff that the owner would not consent. This was nearly a month after their first interview with the plaintiff. Having interposed this objection about the time when, according to the testimony of one of them, they first learned of this difficulty, they must have done some act afterward clearly indicating an intention to accept the assignment without the owner's consent, and to waive the objection which they had previously interposed, and there is nothing in the evidence that would warrant me in finding that as a matter of fact.

This embraces a review of all the points reserved, and upon the grounds stated judgment must be given for the defendants.