SAMUEL GREENE, Plaintiff, *v.* BARRETT, NEPHEWS & Co. and Others, Defendants.

Supreme Court, Richmond Special Term, August, 1922.

**Vendor and purchaser — contract to sell property including leases — clauses forbidding assignments of leases without landlords' consents — vendor bound to obtain consents and where he fails vendee may reject titles and recover earnest money.**

The vendor of a lease containing a covenant not to assign without the lessor's consent, and not the vendee, is bound to obtain the landlord's consent to the assignment.

A company by a contract for the sale of all its property to plaintiff agreed to furnish the assignments of the leases of its various stores situated all over Greater New York. The leases contained a covenant that there should be no assignment thereof without the written consent of the landlord. *Held*, that the absence of such consents was a sufficient ground for rejecting the title, and that the plaintiff vendee in an action to recover the amount paid upon the contract was entitled to judgment for a vendee's lien for the sum so paid by him.

ACTION to recover $50,000 paid by plaintiff to defendants and to establish a vendee's lien therefor.

*Katz & Sommerich* (*John H. Morgan* and *Maxwell C. Katz,* of counsel), for plaintiff.

*Davison & Underhill* (*Alfred T. Davison,* of counsel), for defendants.

DIKE, J. Barrett, Nephews & Co., Old Staten Island Dyeing Establishment, entered into a contract of sale of all its property to the plaintiff. This action is brought now by the plaintiff to recover $50,000 paid by him to the defendants and seeking to have the court declare a vendee's lien for the sum so paid by him. The title to the property was to pass from the vendor, Barrett, Nephews & Co., trustees, etc., on the 1st day of March, 1921. Various adjournments were sought by the plaintiff and secured. On August fourth plaintiff tendered $225,000. Plaintiff raised at that time certain objections to the title and then rejected the title upon several grounds, some of them fanciful, and in my judgment immaterial, some of them serious, and in one case vital. In the main the objections may be enumerated as follows:

1. There were no assignments of the leases.

2. There were no consents to the assignments of leases from the landlords.

3. The consents of stockholders and directors had not been obtained.

4. The new corporation, to which the defendants undertook to transfer the various properties, had ceased to exist as a corporation by reason of the forfeiture of its charter for non-user within two years after the incorporation.

As I view the facts elicited at this somewhat protracted but very interesting trial, I am convinced that the plaintiff, and those back of him, and interested in the proposition with him, were anxious to obtain the assets and good will of this venerable corporation which for so many years has been operating in and around Greater New York. It may be, indeed, that the contract was not consummated by reason of certain financial complications which the plaintiff could not satisfactorily meet. As I look at the case that does not become important, and as I view the entire case and especially the objections that are finally raised by the plaintiff, I feel that I may confine my discussion to the second objection, namely, that there were no consents to the assignments of leases. The other objections seem to me possible of solution in favor of the defendants, but this one, it seems to me, is the crux of the case. When the defendants agreed to furnish the assignments of the leases of their various stores situated all over Greater New York and the vicinity it became a vital and, indeed, a controlling element in this transaction. Not only was the business of this defendant company of importance to the plaintiff, but by reason of the peculiar nature of the business and the long occupation by the company of its various stores, the *locus* of the places for the transaction of the business became an unusual element of value that could not lightly be brushed aside as unimportant.

The leases contained a covenant that there should be no assignment of the lease without the written consent of the landlord. The absence of such consents, therefore, constituted a breach entitling the landlord to re-enter the premises and dispossess the occupant. As was said in *Roberts* v. *Geis*, 2 Daly, 535, 540: " If the defendants should accept the assignment without the written consent of the landlord, and pay the amount agreed upon, they would hold simply at the landlord's pleasure. It is in evidence that the landlord, an heir who has succeeded to the estate since that lease was granted, has declared to one of the defendants that he would not give his consent, saying that the plaintiff had no right to assign, and that if they, the defendants, took possession, he would put them out. This, in the event of an assignment, he could undoubtedly do, and if this court should compel the defendants to accept the assignment, and the landlord should put his threat into execution, the defendants would be wholly without remedy. The landlord could re-enter for condition broken, and a court of

equity could not relieve the defendants against a forfeiture thus incurred."

To hold that the plaintiff might reasonably rely upon the landlords not acting under the terms of the lease and putting an end to the lease for the breach of a covenant, namely, the covenant not to sublet without the written consent of the landlord, would be a dangerous speculation, and especially at this time of building shortage. The defendants seek to assign a lease or leases coupled with a breach of an important condition and, in the instant case, with a vital one, which might mean in case of adverse action by the landlords a business without a place to transact such business and with the loss incidental to moving from a locality where they had become a household word, and where this ancient and honorable company possessed the valuable asset in a business of its kind of drawing its business from that particular locality.

I have read with much interest the brief of the learned counsel for the defense but I do not feel that he has met the argument of the plaintiff upon this point. Nor has he cited any case, in my judgment, which overrules the well-considered law set forth in *Roberts* v. *Geis, supra,* where Daly, P. J., says: " In *Mason* v. *Corder* (7 Taunt. 9), the lease contained a covenant not to assign without the lessor's consent in writing. The action was to recover damages from the defendants for the non-performance of an agreement to purchase the residue of the term of the lease, and it was held, that, to maintain the action, it was incumbent upon the plaintiff to show that he had done all that was requisite on his part, namely, that *he had obtained the lessor's consent in writing to the assignment.*"

The learned judge then reviews the case of *Lloyd* v. *Crispe,* 5 Taunt. 249, where the higher court held: " That it was the lessee's business to obtain the landlord's consent and not the plaintiff's, and that he might recover his £50 back. A new trial was therefore ordered. In accordance. with these decisions, it is laid down as the general rule, in Mr. Platt's very accurate treatise upon the Law of Covenants (p. 442), that the vendor of a lease containing such a covenant, and not the vendee, is bound to obtain the landlord's consent to the assignment."

This case also answers the argument of the defense and holds that the plaintiff's knowledge of this situation was immaterial and that it is incumbent upon the vendor to obtain such consents, as are here discussed. I must, therefore, regard this objection that I have here discussed at length regarding the lack of the landlord's consent as a substantial one. The question of tender

on behalf of plaintiff is answered by the cases of *Oppenheimer* v. *Knepper Realty Co.*, 50 Misc. Rep. 186, and *Ziehen* v. *Smith*, 148 N. Y. 558.

I am not at all impressed, as I have intimated, by the other objections, such as the discrepancy in the metes and bounds of the real property. It was the business that the plaintiff was seeking, and a few inches or, indeed, a few feet upon a factory building in Staten Island would make but little difference. But I am impressed with the objection that I have discussed here. By reason of that I, therefore, conclude that there should be judgment for the plaintiff declaring a lien in the sum of $50,000, together with costs.

Judgment accordingly.