DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF NEVADA,

JULY TERM, 1871.

---

## AARON D. TREADWAY, RESPONDENT, v. WILLIAM SHA-RON, et al., APPELLANTS.

FIXTURES — STEAM SAW-MILL BOILER, ENGINE AND MACHINERY. Where a steam saw mill, put upon land for the purpose of sawing up the timber upon it, had its foundation planted in the ground, and the engine, boiler and machinery were attached by bolts, belts, shafts and pipes to the frame work, which was built upon such foundation: *Held*, that such boiler, engine and machinery were fixtures.

INTENTION NOT MATERIAL ON QUESTION OF FIXTURE OR NOT FIXTURE. The fact that there is but a limited supply of timber on land upon which a steam saw-mill is put, and that it is the intention to remove the mill as soon as the timber is sawed, does not render the boiler, engine and machinery, otherwise fixtures, any the less such.

CAPEN VS. PECKHAM, 35 CONN. 88, and other cases, holding that on a question of fixture or not fixture, intention is a universal criterion and controling test, are in direct antagonism with well established principles.

PRINCIPLE OF TENANT'S RIGHT TO REMOVE FIXTURES. The law indulges a tenant with the right of removing fixtures during his term, not out of any regard to his intention, but by way of exception to a rule which would otherwise work hardship or retard improvement.

REMOVAL AFTER PATENT, OF FIXTURES ERECTED ON PUBLIC LAND.   Where occupants
    of public land erected fixtures, consisting of a saw-mill, thereon, but failed to
    take any steps to acquire the title to the same; and afterward the land was
    selected by the state, and (not being applied for by the occupants within six
    months) was duly sold and patented to other parties, subsequent to which the
    occupants removed the mill:   *Held*, that they were trespassers, and liable in
    damages for such removal.

GOLD COIN JUDGMENT IN TRESPASS CASE.   A judgment for gold coin in a trespass
    case is in conformity with the statute, (Stats. 1869, 228) which is constitu-
    tional.

CUSTOM—INSUFFICIENCY OF PROOF.   Where a custom was claimed to exist in
    relation to the machinery of saw-mills, that after being put up on timber land
    and the timber in the vicinity all sawed it was moved away to other land—the
    object of said alleged custom being to show that certain saw-mill machinery
    was not a fixture—and testimony was given by a single witness, that "saw-mills,
    in this country, are built to saw the timber in their vicinity, and when the tim-
    ber is sawed the machinery is moved away and the frame left, as a general
    thing;" and the court found that the machinery in question was a fixture: .
    *Held*, that even if a custom could be proved by one witness, the finding
    against the alleged custom should not, under the testimony here, be disturbed.

APPEAL from the District Court of the Second Judicial District,
Ormsby County.

This was an action against William Sharon and Joseph A. Rigby
to recover damages for alleged trespass in removing a saw-mill, in-
cluding its boiler, engine and machinery, from the southeast quarter
of section 34, township 16 north, range 19 east, in Ormsby County.
The land is the same which was in controversy in the case of
*O'Neale* v. *Cleveland*, reported in 3 Nev. 485.   Cleveland, who
had been in possession of it, appears to have transferred the occu-
pancy to John R. Knox & Co., who put up the saw-mill in 1867,
and in the same year sold out to Mr. Sharon.   The state selected
the land July 3d, 1868; and the patent to Treadway was issued
October 27th, 1869.   The mill was removed in November, 1869.
There was a judgment for plaintiff in the sum of $3,500, gold
coin, from which, a motion for new trial having been denied, this
appeal was taken.

On the trial Thomas Andrain, a witness for plaintiff, on cross-
examination, testified, among other things, as follows:   "I owned
saw-mills in El Dorado County, California.   I know how saw-mills
are built in this country; they are built to saw the timber in their

vicinity ; and when the timber is sawed the machinery is moved away and the frame left, as a general thing.   The mill in dispute is one of those I spoke of."   The foregoing was the only proof of custom.

*Hillyer, Wood & Deal*, for Appellants.

I. The property was personal, and belonged to defendant.   It formed no part of the realty, and did not vest in the plaintiff by his patent.    Whether a fixture passes with the land, depends upon various considerations, as the circumstances under which it was placed upon the land, the intention of the party who placed it there, the character of the fixture and its use, the means by which it is attached to the land, and whether it can be removed without material injury to the freehold.

II. At the commencement of this action defendants were in possession, claiming the right to the premises.   They entered by permission of the state.   Their title was good against all the world except the state at the time the patent was issued to plaintiff.   The relations that existed between the state and defendants were those of landlord and tenant, and it was a tenancy under an implied agreement that defendants might remove all improvements placed upon the land by the tenants.

III. The machinery was placed in the mill for the purpose of sawing the timber that could be sawed with profit, and then of being removed to some other locality, there to be again used for the same purpose.   It had been used in the same manner before it was placed in the mill.   Whatever conflict there may be in the books in regard to fixtures, there is no respectable authority to support the position that trade fixtures cannot be removed by the tenant. It is the custom in this state to remove such machinery.

IV. It would be disastrous to the interests of this state if those who have settled upon public lands may be deprived of costly machinery placed by them upon the public land for manufacturing purposes, by those who have the shrewdness to ascertain the fact that such machinery is upon the land, and that the land is for sale. This state has been settled and its resources developed by its pol-

icy of permitting its lands to be occupied by the first comer and protecting him in his possession. It certainly ought not to be permitted to take away the property of such settler who has entered under its permission and made improvements under its encouragement.

V. There was error in entering judgment for gold coin. This is not a case of contract. Legal tender notes can be paid in satisfaction of any debt except in the case of one created by specific contract. The legislature has as much authority to enact that all payments for work done shall be in gold coin, as in the case of damages.

*A. C. Ellis,* for Respondent.

I. This is an action in a state court, the remedies in which the Federal Government has no control over. But when defendants tender currency in satisfaction of the judgment, it will be time enough to raise the point that legal tenders will and ought to satisfy it.

II. The mill was a part of the *land;* its foundation was buried or dug into the ground; the boiler bricked over; the pipe connecting boiler and cylinder fastened by screws and solder, and the foundation of the cylinder let into the ground, and the whole connected with the other machinery by belts and shafts, and attached to and under the general building.

The mill was part of the realty, and passed with it. 14 Cal. 59; 20 Wend. 639; 35 Barb. 58; *Pyle* v. *Pennock,* 2d Watts & Leigh, 390; 4 Humph. 431; 3 Hill S. C. 331; 11 N. H. 540; *Farren* v. *Stackpole,* 6 Greenl. 154.

III. The proposition that defendant Sharon was a *tenant* of the state, and hence had the right of removal, as trade fixtures, cannot be maintained. Defendant fails to show any compliance with any law of Nevada which would entitle him to possession of the land for a moment. He was a naked trespasser, stripping the state land of its timber. Because in every case cited, the relation of landlord and tenant existed beyond any question; and where removal was tolerated at all, it was always within the term and solely

in the interest of trade; and the rule reiterated, as it was at common law, that, as between heir and executor, grantor and grantee, the strictest construction was given to the doctrine of fixtures. What becomes, then, of the doctrine of *intention*, as referred to in 1st Ohio St. 511?

IV. Before intention can be considered as having any bearing upon a question of fixtures, the relation of landlord and tenant must be clearly established. There must be some privity of estate between the party claiming the right of removal and the party resisting the claim, or those claiming under such party.

*Clarke & Wells,* also for Respondent.

By the Court, GARBER, J.:

The boiler and engine in controversy were actually and firmly annexed to the soil—*solo infixa,* in the strictest sense of the term; and the other articles, if not actually, were constructively annexed, and follow the nature of the principal portion of the machinery, as essential parts of one entire combination. The machinery was "annexed to the freehold for the better enjoyment of the freehold, attached to the soil for the soil's use, and essential to the inheritance for its only valuable purpose." It therefore became a fixture. It is true, the parties testified that they erected the mill with the intention of removing it. But such evidence was palpably inadmissible; and although admitted without objection, is entitled to no weight whatever. *Wadleigh* v. *Janvrin,* 41 N. H. 512.

It is urged that an intention to devote these articles as a permanent accession to the freehold, was a prerequisite to their conversion from chattels into realty; and that, as there was only a limited supply of timber in the vicinity of this mill, which could be hauled to and sawed by it without loss, such intention is not only not proved, but the contrary is clearly inferable.

Now, every saw-mill may, sooner or later, exhaust the available timber in its immediate vicinity—yet, it would hardly be contended that a saw-mill, as such, is always and necessarily a chattel. That all the available ore in a quartz lode may be extracted, is as true as that all the available timber near a mill may be sawed; and it

rarely, if ever, happens that the machinery first erected on a ledge is suited or intended to do the work of hoisting and pumping from the deeper workings, which favorable developments may induce. Yet ever since the great case of *Fisher* v. *Dixon*, it has been settled law, that machinery annexed to the soil for mining becomes part of the soil; and in *Merritt* v. *Judd*, 14 Cal. 60, a small steam engine and pump were adjudged to be fixtures. If it was the intention, in the latter case, to work the ledge to any great depth, it must also have been the intention to replace this small engine and pump with others, larger and of greater power. It cannot be, then, that an intention to remove, at any time, however remote— for instance, when the greatest depth consistent with profitable working shall have been attained, or whenever more powerful machinery must be used—controls the act of annexation, or rebuts the presumption that thereby the chattel is made a part of the land. Then, where shall the line be drawn ? If a steam pump calculated to drain the mine to a depth of five hundred feet, or a mill with timber for three years' sawing, remain chattels, with how much power would the engine, and with how much timber would the mill become a fixture ? The mill in question, a large, well equipped, and perfectly appointed steam mill, was actively operated nearly three years. The same body of timber might have supplied a smaller mill, poorly constructed, for many years. Would the latter become real estate, and the former remain a chattel ? That it is the annexation, and not the intention, which controls in such a case as this, is shown by the law as to young trees, temporarily set out in a nursery and intended for transplantation and sale. These are part of the realty; at common law, go with the land to the heir, and pass to a vendee of the land. *Maples* v. *Mallon*, 31 Conn. 598 ; *Lee* v. *Risdon*, 7 Taunton, 188 ; *Smith* v. *Price*, 39 Ill. 28.

If this machinery was personal property after annexation, common law larceny could have been committed of it. But not even growing corn is the subject of such felony, because it is " annexed to the freehold." 1 Hawkins P. C. 148. The cases cited for appellants, (one of the latest and best reasoned of which class is *Capen* v. *Peckham*, 35 Conn. 88) are shown to be in direct antagonism with well established principles, by the very illustrations relied

upon to prove that, in questions of this kind, intention is a universal criterion and controlling test.   For if, in order to constitute an article a fixture, it must appear that a permanent accession to the freehold was intended ; and if, in cases arising between landlord and tenant, a presumption arises from the relation of the tenant to the property, that he did not intend to make trade fixtures erected by him a part of the realty, thus making a donation of them to the owner of the soil ; it should follow, as these cases assume, that such trade fixtures retain their quality of chattels, and are no part or parcel of the realty.

But we take the law to be, that trade fixtures do become part of the realty, whatever intention to the contrary on the part of the tenant erecting them may be inferred from his limited interest in the land.   *Lee* v. *Risdon, supra* ;  *Coombes* v. *Beaumont,* 5 B & Ad. 72 ;  *MacIntosh* v. *Trotter,* 3 M. & W. 184 ;  *Powers* v. *Dennison,* 30 Vt. 752 ;  *Mott* v. *Palmer,* 1 Comstock, 564 ;  *Pemberton* y. *King,* 2 Dev. 376 ;  *Reynolds* v. *Shuler,* 5 Cowen, 323 ;  *Boyd* v. *Shorrock,* L. R. 5 Eq. 72.

Although part of the realty, the law indulges the tenant with the right of removing them during his term, not out of any regard to his intention, but by way of exception to a rule which would otherwise work hardship or retard improvement.   For the same reason, they could be taken under a *fi. fa.,* and passed to the executor, thus extending the benefit of the exception to the creditors of the lessee.   Just as emblements, though part of the realty so as to pass the vendee or devisee of the land, and to belong to a successful plaintiff in ejectment, went at common law to the executor and were subject to levy, by reason of an exception introduced for the benefit of the creditors of tenant in fee.   2 Black. Com. 404.   Trade or removable fixtures, erected by a tenant for life or years, pass by a grant of the land, or a mortgage or assignment of the term or lease—by instruments in which no mention of them, *eo nomine,* is made.   Why ?   Because they are part of the realty described.   If still chattels, they would no more pass than a horse of the tenant standing in a stable on the land.

To apply the other illustrations used in *Capen* v. *Peckham* to this case, suppose it had been found that the articles here in question were

annexed for the single purpose of steadying them for more convenient use as chattels, without any intention to benefit or improve the realty; and that they were removable without any appreciable damage to themselves or to the freehold. If, as is asserted in *Capen* v. *Peckham*, these findings would "show for what purpose the annexation of the articles was made, that it was done with no design to make them part of the realty," it follows that such design, instead of being "material and important," is simply irrelevant. For the addition of the supposed findings to those already in the record would not vary the result. The machinery in question would still be deemed a fixture. *Climie* v. *Wood*, L. R. 4 Exch. 328; S. C. L. R. 3 Exch. 259; *Longbottom* v. *Berry*, L. R. 5 Q. B. 138; *Mather* v. *Fraser*, 2 Kay & Johns, 548; *D'Eyncourt* v. *Gregory*, L. R. 3 Eq. 382: *Johnson* v. *Wiseman*, 4 Met. (Ky.) 357.

These fixtures were not removable by appellants, either as tenants or by custom. At the time the mill was erected, and for more than a year thereafter, the land described in the complaint was public land of the United States; and consequently, during all that time, the parties erecting and running the mill were naked trespassers. The mill passed to the state of Nevada, with the land, on the third day of July, 1868. Appellants claim that, by the state statute, they, as occupants, had the right of preëmption for six months after July 3d, 1868; and that hence their position was analogous to that of a party holding possession under agreement to purchase *after the agreement is ended;* and, therefore, analogous to that of a tenant at will of the state. If this be conceded, the supposed tenancy at will must have had its inception on the third of January, 1869, more than a year after the completion of the mill, and was therefore a tenancy of the mill, as well as of the land.

The right of removing trade fixtures has been liberally construed in favor of the tenant: yet, we believe, never so liberally as to embrace, not only those erected during the term, but also such as constitute a portion of the thing demised.

The most appellants can claim is, that the statute was passed in contemplation of the selection of the land by the state, and the mill was erected on the faith of the right of preëmption given by the

statute ; and that, consequently, they and their predecessors occupy the position of one entering into possession of, and erecting trade fixtures upon land, under a right to purchase subsisting at the time of the erection, but afterwards forfeited and lost by his own laches. Such an occupant has no greater right to the fixtures, as against the purchaser whom he suffers to acquire the title to the land, than has the vendor of land as against his vendee. *King* v. *Johnson*, 7 Gray, 240·; *Hemenway* v. *Cutter*, 51 Maine, 497 ; *McLaughlin* v. *Nash*, 14 Allen, 136.

Then, whether the mill was erected by trespassers on the land, or by parties clothed with a right of preëmption, the result is the same. On either view, the question is, would the machinery have passed to plaintiff, if, instead of obtaining a patent from the state, he had taken from the appellants a deed for the land? We think it would have passed, under the general rule that, when a chattel has been affixed to the soil, it passes with the soil. Between landlord and tenant this rule was relaxed, to relieve the tenant from the dilemma of submitting, either to the inconvenience of conducting his business with articles capable of use without annexation, or to the injustice of surrendering to his landlord, at the expiration of the term, articles unfit for use unless so fastened and steadied as to become fixtures. But this relaxation is strictly an exception to the general·rule, to be extended only to cases within the policy and exigency which gave rise to it.

The appellants were not placed in the dilemma from which the exception rescued the tenant. All they had to do was, to avail themselves of their right to acquire the title to the land. Failing in this, they can with as little reason complain of the rigor of the rule of law, as could a vendor, failing to avail himself of his right to disannex before selling, or to except the fixtures in the deed. As to the custom relied on, even if a custom can be proved by one witness, we cannot say the court below erred, in finding, as presumably it did, against the existence of a custom evidenced as this was. *Bissel* v. *Ryan*, 23 Ill. 556, and cases cited.

On the question of value, there was evidence to sustain the finding, irrespective of that based on profits.

The finding and judgment for gold coin conform to and are author-

ized by the statute.   (Stats. of 1869, 228, Sec. 202.)   Of the
constitutionality and validity of that statute, we entertain no doubt,
and shall adhere to our former decision upholding it.

The judgment and order appealed from are affirmed.

By WHITMAN, J., dissenting :

The district court rendered a judgment against appellants for
the value of certain machinery, by them taken from the land of
respondent.   The court finds that they removed therefrom " a cer-
tain steam engine, steam boiler, circular saws, and other machinery
appurtenant to and belonging to a certain saw-mill situated upon
said land ; that the said mill was attached to the soil by foundation
planted in the ground, upon which the frame-work of the mill was
built, and that said engine, boiler, saws and other machinery per-
taining to said mill, were attached thereto by being bolted to the
frame-work of the mill, and by means of belts, shafts and steam-
pipes, in such a manner as to make said mill available for the man-
ufacturing of lumber ; that said engine, boiler, saws, and other ma-
chinery, were fixtures and a part of said real estate."

Were they so fixtures, and part of the real estate ?   There would
at first seem to be very considerable confusion of authority in the
decided cases touching the constituent qualities necessary to change
a chattel into a fixture, personalty into realty ; but a careful exam-
ination of the leading cases will dissipate this fog, more apparent than
real.   The first thing to be looked for is a rule of decision ; and as
to that, it will be found in many instances that a looseness of lan-
guage has been indulged in, and there has been failure to clearly
express as premise, what, upon review of conclusions, will be seen
to have been generally accepted and acted upon.   In a very elabo-
rate opinion, touching the question in all its bearings, and upon a
careful comparison of decided cases, Chief Justice Bartley proposes
the following, saying : " I have reached the conclusion that the
united application of the following requisites will be found the safest
criterion of a fixture :   1st. Actual annexation to the realty, or
something appurtenant thereto.   2nd. Appropriation to the use or
purpose of that part of the realty with which it is connected.   3d.
The intention of the party making the annexation to make the ar-

ticle a permanent accession to the freehold—this intention being inferred from the *nature* of the article affixed, the *relation and situation of the party* making the annexation, the structure and mode of annexation, and the purpose and use for which the annexation has been made. This criterion furnishes a test of general and uniform application, and by which the essential qualities of a fixture can, in most instances, be certainly and easily ascertained, and tends to harmonize the apparent conflict in the authorities relating to the subject." *Teaff* v. *Hewitt,* 1 Ohio St. 511. This rule is approved in the recent case of *Potter* v. *Cromwell,* 40 N. Y. 287.

The facts of this case, so far as it is necessary to recite them, are, that Sharon, by his agents, entered upon the land in question on or about the fourth day of November, 1867, for the purpose of running the saw-mill before mentioned. That he was the grantee of the Brothers Knox, who, as lessees of one Cleaveland, (claiming title to the land) had gone thereon, erected the saw-mill with the intention of cutting the available timber, and then removing. The machinery put up for this purpose had been brought from another place, where it had been similarly used and, with its housing constituted one of a class of mills such as the witness Andrian testifies " are built in this country; they are built to saw the timber in their vicinity, and when the timber is sawed, the machinery is moved away and the frame left, as a general thing." At the time of this erection by the Knox Brothers, their lessor was in possession of the land, having a house upon it, and claiming to purchase or obtain title from the state. There was a contest about the land, between Cleaveland and another party not interested in this suit ; but afterward a receipt was endorsed upon the land warrant of Cleaveland, filed with the state register, which constituted, under the act of 1867, *prima facie* evidence of title in him for the time being. (Stats. 1867–68, Sec. 9.) Cleaveland afterward, on the 9th of March, 1869, as is claimed by respondent, forfeited all claim to the land, and a patent was issued to the latter on the twenty-seventh day of October, 1869.

Whether that be so or not is no pertinent inquiry in this case under the pleadings, and this statement with regard to the title is made simply to show how the appellants happened to be upon the

land, to which respondent, so far as this case is concerned, has the absolute legal title.

Respondent never has been in possession of the land ; and appellant so being, on or about the eighteenth of November, 1869, removed the machinery in dispute.   The land was selected by the state, under the act referred to, in July 3d, 1868.   For six months from that date, by the express terms of the statute, " an occupant or party in possession" had a preferred right to purchase.   What position did the occupant or possessor take after the expiration of that period ?   Evidently not that of a naked trespasser, as claimed by counsel for respondent, for the whole tenor of the statute is encouragement of said occupants or possessors.   The condition would seem to be analogous to that of a party in possession, under agreement or permission to purchase after the agreement is ended.   Not a tenant in the ordinary sense of the word, "for the possession was evidently taken in such case with the understanding of both parties —that the occupant should be owner, not tenant ; and the other party cannot, without his consent, convert him into a tenant, so as to charge him with rent ; but if the vendee remain in possession after the agreement is ended, he is liable in use and occupation for the period of his occupancy."   Taylor's Landlord and Tenant, 19–20.   The author adds in a note : "The vendee's right is a bare right to occupy—called a strict tenancy at will—and being nothing more than a license determinable by mere demand, upon which ejectment lies without any notice to quit.   To the same effect upon the general proposition, see *Frisbie* v. *Price*, 27 Cal. 253.

Thus these defendants stand at the date of plaintiffs' patent— tenants at will of the state of Nevada, having a saw-mill upon the land in question, built for a fugitive and temporary purpose, with the intention of removal according to a general custom of the trade they were exercising.   Now, apply the rule in the light of decided cases, and test the status of the property in question ; and first, without reference to the termination of the tenancy.

One Coombs by permission of Doty moved a building on the premises of the latter, and occupied it as a shop.   It was sold at constable's sale upon execution against Coombs to Gorham, who entered upon Doty's premises and removed it.   In an action of

trespass by Doty against Gorham, for entering his close, destroying his fence and removing the shop, there was a judgment for defendant, which was sustained by the court upon the ground that the shop was a chattel, which Coombs, tenant at will, might rightfully have removed while he continued to own it during such tenancy. *Doty* v. *Gorham*, 5 Pick. 487.

"A being the owner of a mill privilege, bargained by parol to sell it to B & C, who went on by permission of A and built a mill thereon. Soon afterward a creditor of B & C, in a suit against them, attached the mill as their personal property, and caused the same to be sold on execution, D being the purchaser, and A being present at the sale, and stating that he did not claim it. About three years after this, the mill in the mean time having been in possession of A, was sold by him with the privilege for a valuable consideration to E, conveying it by deed of warranty; E having no notice of the claim of B & C, or D, the purchaser under them. *Held*, that under the circumstances the mill never was part of the freehold, but was the personal property, first of B & C, and then of D, and that the latter might maintain trover for the mill against E on his conversion of it." *Russell* v. *Richards, et al.*, 1 Fairfield, 429.

If one man builds a house on land of another by his permission, the house is personal property, and does not pass by the conveyance of the land to a third person, but remains the property of the builder. *Tapley* v. *Smith*, 18 Maine, 12. It was held in Wisconsin, upon the ground of custom, that a house might be removed by an outgoing tenant who had built upon a vacant lot, though no such permission was given by the lease. '*Keogh* v. *Darnell*, 12 Wis. 163. So with a cider-mill and press in New York, on the ground of trade fixtures. *Holmes* v. *Kemper*, 20 Johns. 28. So in England, a building upon a brick foundation let into the ground with a chimney belonging to it. *Penton* v. *Robart*, 2 East, 88. So in Washington, a wooden dwelling house two stories high in front, with a shed of one story, upon a cellar of stone or brick foundation and a brick chimney. *Van Ness* v. *Packard*, 2 Peters, U. S., 137 ; see also *Wall* v. *Hinds*, 4

Gray, 256; *Wells* v. *Barmeister*, 4 Mass. 514; *Raymond* v. *White*, 7 Cowen, 319; *Eleves* v. *Marr*, 3 East, 34.

These cases, though perhaps formally based upon some expressly stated reason, not including the united elements of the rule quoted, will yet be found upon thorough examination to have their logical basis thereon, as in the facts of each there is shown a want of the united elements necessary to work the change from chattel to fixture; and in them will be found full warrant for saying that the finding of the district court in this case was incorrect, and that the property in question never became in the strict and proper sense of the word, fixtures. The machinery was annexed to an appurtenance to the realty, but so that it might be removed without serious damage thereto. It had no special appropriation to that portion of the realty with which it was connected. The intention of the party making the annexation as declared and as naturally to be inferred : " the nature of the article affixed, the relation and situation of the party making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made," can be accomplished only by considering and treating the machinery precisely as it was treated by the defendants, as chattel property.

Judge Bartley says, with reference to the rule quoted : " This criterion furnishes a test of general and uniform application; one by which the essential qualities of a fixture can, in most instances, be certainly and easily ascertained, and tends to harmonize the apparent conflict in the authorities relating to the subject. It may be found inconsistent with the reasoning and distinctions in many of the cases, but it is believed to be at variance with the conclusion in but few of the well considered adjudications. Adopting this as the criterion, there will be found no occasion for giving an ambiguous meaning to the term fixtures; no occasion for denominating an article a fixture at one period of time, which with the same annexation would not be such at another period; no occasion for determining that to be a fixture as between vendor and vendee, which under like circumstances of annexation would not be such as between landlord and tenant; or finding that to be a fixture as

between heir and executor which under like circumstances of annexation would not be such as between tenant for life and remainder man or reversioner.     *Sturges* v. *Warren,* 11 Vermont Rep. 433. It is true, the time of the annexation and the relation and situation of the parties may constitute very important considerations in ascertaining the intention and object of making the annexation.

Why is a tenant for life, or for years, or at will, favored with the right of removing articles which he attaches to the land during his term ?     The Supreme Court of Massachusetts say, in *Whiting* v. *Brastow,* 4 Pick. 311 : " There seems to be no doubt that, according to the later decisions in England, and several cases in our own books, a tenant for life, for years, or at will, may, at the expiration of his estate, remove from the freehold all such improvements as were erected or placed there by him, the removal of which will not injure the premises, or put them in a worse plight than they were when he took possession." All that is required of a tenant is, to leave the land in as good condition as it was when he received it. When, therefore, a tenant erects expensive structures for carrying on his trade or business, which can be removed without their desstruction, or material injury to the freehold, the presumption is a rational one, that it was not the intention of the tenant to make them permanent accessories to the freehold, and thereby donations to the owner of it.     The *intention* of the tenant, clearly inferable from his situation and relation to the landlord, is the real foundation of the right of removal with which he has been favored.     It is true, other reasons of great subtlety and considerations of public policy have been frequently assigned for this right of removal ; but they are doubtless attributable in some degree to a laudable desire on the part of the courts to carry out the real intention of the party.     It is said that the right of removal must be exercised by the tenant before the expiration of his term, or in some cases within a reasonable time afterwards ; that the tenant can remove things which he has attached to the land for the purposes of trade or manufacture, when not contrary to some prevailing custom, or where it can be done without material and essential injury to the freehold, or where the erections in themselves were strictly chattels in their nature before they were put up, and can be removed without being entirely

demolished, or losing their essential character or value. Amos & Feraud on Fixtures, 40 and 44. All these circumstances furnish considerations bearing upon the intention of the tenant in making the erections, and their temporary nature and want of adaptation to the permanent use and enjoyment of the freehold, and show the application of the criterion here adopted."

Whether the facts of this case be tested by the broad and logical theory of the rule announced in *Teaff* v. *Hewitt*, or be treated under the more narrow construction applied to trade-fixtures, still the result is the same. Such fixtures might properly be removed within the term of a tenant at will, or within a reasonable time after the determination thereof. *Doty* v. *Gorham*, 5 Pick. 487 ; *Rising* v. *Stannard*, 17 Mass. 282 ; *Whitney* v. *Brastow*, 4 Pick. 310 ; *Davis* v. *Thompson*, 13 Me. 209 ; *Ellis* v. *Paige*, 1 Pick. 43.

The first and third of the decisions last cited are criticised in *White* v. *Arndt*, 1 Wharton, 91, but it is difficult to see upon what principle a tenant at will could be denied a reasonable time after the determination of his tenancy to take away whatever he would rightfully have been entitled to remove during his term, had he been a tenant for any specific period. The law may raise a presumption against such last-named tenant, if he does not remove his fixtures, that he intends to leave them for the benefit of the estate ; and it is upon such theory only that the landlord holds : but no such presumption arises in the case of the tenant at will, as he cannot know in advance the termination of his tenancy, and therefore cannot know when to remove ; and must always be open to this baseless presumption, unless he is to be allowed a reasonable time after such termination to remove.

In *Penton* v. *Robart*, however, this right of the tenant was extended to one actually in possession after lease expired, against whom a judgment in ejectment had been obtained ; and the verdict was for the plaintiff landlord, as to trespass in breaking and entering, damages one shilling : and for the defendant tenant, as to the rest of the trespass. This case, it is claimed, is shaken, so far as it would authorize a tenant thus holding over to remove fixtures ; but it is upheld in *Holmes* v. *Tremper*, cited above ; the court saying : "And when it is said that the removal must be within the

term, or else he will be a trespasser, it means only a trespasser as regards the entry "; and such would seem to be the logical sequence of the rule for the protection of tenants. However that may be, it is not necessary to rely upon any extreme decision in this case, for, even if not entitled to notice to quit before they could be held trespassers, on which point no opinion is here expressed, still defendants were rightfully holding until their estate was determined. Accepting the view most strongly against the defendants, there is nothing in the facts of the case from which such termination can be gathered, prior to the act of the state in giving to plaintiff a patent, upon the twenty-seventh day of October, 1869; and upon the eighteenth of the next month the property was removed, certainly not any unreasonable time, upon the facts of the record. So, whether the machinery be held to be chattel property, or trade fixtures, in either case the defendants had the right to remove it. The patent of the state of Nevada consequently could not pass the property to respondent.

Holding these views, I dissent from the opinion of the majority of the court.