[No. 1863]

MARVIN ARNOLD, RESPONDENT, *v.* GOLDFIELD THIRD CHANCE MINING COMPANY, A CORPORATION, APPELLANT. ·

1. MINES AND MINING—MINING CLAIMS—NATURE OF PROPERTY.
    A mining claim is real property.

2. FIXTURES—MINING APPLIANCES.
    Engines, boilers, hoisting works, mills, pumps, and the like annexed to the soil for mining are fixtures.

3. FIXTURES—AGREEMENT BETWEEN SELLER AND BUYER—RIGHTS OF THIRD PERSONS.
    Where a buyer of chattels under a contract stipulating that the same shall be regarded as the personal property of the seller, with the right of removal until paid for, attaches the property to real estate so as to make the same fixtures, the chattels are fixtures against every one except the seller, and a judgment creditor of the buyer and a purchaser at an execution sale may not claim the property as personal property by virtue of the contract.

4. FIXTURES—MINING APPLIANCES.
    An electric hoist firmly bolted to the substructure on which it rests, and the superstructure and engine-house surrounding it, sufficiently affixed to the soil for mining purposes, are fixtures.

5. FIXTURES—MINING APPLIANCES.
    A gallows frame at a mine, the base of which was originally sunk into the earth only far enough to make it level and substantial for use for mining, and subsequently covered to a depth of several feet with rock and earth taken from the mining shaft and dumped around it, together with the gallows, hoist, and transformers, forming integral parts of one mechanism essential to the operation of the mine, are fixtures.

6. EXECUTION—FIXTURES—SALES—VALIDITY.
    A sale of property as personal property at an execution sale is invalid where any of the articles sold were fixtures.

APPEAL from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County; *Theron Stevens*, Judge.

Action by Marvin Arnold against the Goldfield Third Chance Mining Company. From an order denying a motion to vacate a sale on execution against defendant, it appeals. **Reversed and remanded.**

The facts sufficiently appear in the opinion.

*S. Wyman Smith*, for Appellant:

I. The proper rule in regard to fixtures is that if articles are essential to the realty, having been applied exclusively to use in connection with it, are necessary for that purpose, and without such or similar articles the realty would cease to be of value, then they may properly be considered as fixtures and pass with it. (*Hoyle* v. *Plattsburg & M. R. Co.*, 51 Bar. 45; *Cary Hardware Co.* v. *McCarthy*, 50 Pac. 744.) Whether fast or loose, all the machinery of the manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, is a part of the freehold as between vendor and vendee, debtor and execution creditor. (*Voorhis* v. *Freeman*, 37 Am. Dec. 490; *Gray* v. *Holdship*, 17 Am. Dec. 680; *Pres. of Union Bank* v. *Emerson*, 15 Mass. 159.)

II. Anything intended to remain permanently in its place, if not attached to the land, is a fixture, such as rail fence. (*Smith* v. *Odom*, 63 Ga. 49.) A cistern placed by the side of the house and depended upon to supply water for the premises, is a fixture. (*Cole* v. *Reach*, 37 Tex. 413.) Machinery held down by its own weight is a fixture. (*Farrar* v. *Stackpole*, 19 Am. Dec. 201, note; *Corless* v. *McLagen*, 29 Me. 115; *Parsons* v. *Copeland*, 33 Me. 537; *Burnside* v. *Twitchel*, 43 N. H. 390; *Voorhis* v. *Freeman*, 37 Am. Dec. 490, note.)

III. The term "real estate" shall be deemed and taken to mean and include, and it is hereby declared to mean and include, all houses, buildings, fences, ditches, structures, erections, railroads, toll roads and bridges, or other improvements, built or erected upon any land, whether such land be private property; or property of the state or the United States. From this definition, it will be seen that even in the absence of the

decisions quoted above, that according to the terms of the above definition that the buildings, gallows frames, hoists, transformers, ore car, etc., came within the definition of real estate. From a careful consideration of all the authorities stated above, there is only one conclusion to reach, from the facts as found by the judge in his ruling on motion and as appears from the affidavit on file, that all of the said articles are fixtures.

*James K. Reddington,* for Respondent:

I. There is perhaps no branch of legal inquiry in which so many varying expressions of the courts, obiter and otherwise, can be found as that relating to the fixtures as distinguishable from personal property. It would be useless to attempt to follow and reconcile them, in their vicarious wanderings, explainable only on the theory that no two cases are precisely alike. Through all of these cases, however, runs one common and accepted doctrine, to wit, that, in order to change the character of personalty to that of real estate, there must be some actual or constructive annexation or affixing of the same to the soil. This is the old common-law doctrine which has been retained and preserved as the groundwork and the foundation of all the modern decisions. Indeed, it is safe to assert that not a decision can be found which, reduced to its last analysis, does not rest upon the principle above stated. In other words, an article, to become a fixture, must, in some way, by some physical act, be affixed or attached to the realty, either actually or by such a physical fact as to amount to legal constructive annexation. There must always be some physical attachment of the personal property to the realty. As a summary of the general authorities on this point and the leading case in Nevada, we cite the following: "Physical attachment of a chattel to the realty is necessary to render it part of the realty." (Am. & Eng. Ency. Law, vol. 13, p. 600, and cases there cited, including English authorities and cases in eighteen states; *Brown* v. *Lillie,* 6 Nev. 344.) An attachment merely for the purpose of steadying machinery, or for more convenient use, does not make it a fixture. (Am. & Eng. Ency. Law, vol. 13, p. 608, note 1, and cases there

cited, including Canada and ten states.)   So, too, it must be attached by the owner of the personal property or with concurrence or assent.   (*March* v. *McCoy*, 36 Cal. 85; *Shoemaker* v. *Simpson*, 16 Kan. 420; *C. P. R. R. Co.* v. *Fritt*, 20 Kan. 420; *Mich. M. L. Co.* v. *Cronk*, 93 Mich. 49.)

II.   A building erected upon public land, merely resting on blocks, is not a part of the public lands and can be removed by the person placing it there.   (*Pennypacker* v. *McDougall*, 48 Cal. 460.)

III.   Counsel for appellant cites as containing a definition of "real estate" applicable to the case at bar, section 1082 of the Compiled Laws of Nevada, and, in citing and quoting that section, misquotes it, by leaving out a clause which expressly excludes its application to this case.   This section is found in the compilation under the title of "Revenue, Taxes and Licenses," and is a reprint of the act of March 3, 1891, entitled "An act to provide revenue for the support of the government of the State of Nevada, and to repeal certain acts relating thereto."   The entire act relates only to the subject of raising revenue by taxation and licenses, and, to classify different species of property, for that purpose only, designates what shall be termed "real estate" and what "personal property."   To sustain his claim that the definition of "real estate" given in this statute settles the question at bar, counsel, in his brief, thus quotes the statute: "The term 'real estate' shall be deemed and taken to mean and includes."   The section, as it actually reads, supplying what counsel has been pleased to omit, is as follows: "The term 'real estate,' when used in this act, shall be deemed and taken to mean and include," etc.   If the rest of counsel's brief is as reliable and trustworthy as the above, it will be found a very valuable aid to this court in its determination of the case.

IV.   The evolution of the original common-law doctrine on the subject has resulted in the now established rule that a chattel only becomes a fixture, and as such part of the realty, upon the coexistence of the following conditions: (1) An annexation to the soil, either actual or constructive; (2) An adaptation of the article so annexed to the use and purposes of the realty; (3) An intention that such annexation should

be permanent, such intentions to be ascertained from all the circumstances of the case. (Am. & Eng. Ency. Law, vol. 13, p. 600, citing cases from twenty states; Cyc. vol. 19, pp. 1038, 1039; Amos and Ferard on Fixtures, p. 2; Ewell on Fixtures, pp. 13, 14, 18 to 21; *Walker* v. *Sherman*, 20 Wend. 636, 655; *Teaff* v. *Hewitt*, 1 Ohio St. 511; *Walford* v. *Baxter*, 33 Minn. 12–18.)

By the Court, NORCROSS, C. J.:

This is an appeal from an order made after final judgment denying a motion to set aside and vacate a sheriff's sale upon execution, issued against the above-named appellant. The respondent herein recovered judgment in the lower court against appellant for the sum of $1,098. Thereupon execution was issued, and on the 7th day of July, 1909, under and by virtue of such execution, the sheriff of Esmeralda County sold as personal property of the defendant, appellant herein, one thirty-horsepower electric hoist; one frame building inclosing said hoist; one gallows frame, including crosshead and sheave wheel; one ore car; one engine-house; one blacksmith shop; three transformers, and one transformer house. The foregoing property was sold in one lot for the lump sum of one hundred and twenty-five dollars.

The motion to set aside and vacate the sheriff's sale under execution was based upon the ground that all of said property, or at least the greater portion thereof, constituted fixtures, and hence could not be sold as personalty. The question involved here is whether or not the buildings, hoist, motor, and transformer, or any of them, constitute "fixtures" as that term is understood in the law. If they, or any of them, are fixtures, then the sheriff's sale was void, and the order of the trial court should be reversed.

The motion to set aside the sale was supported by the affidavit of the president and general manager of the defendant and appellant corporation. His affidavit sets forth the condition of the property in question at the time of the sale to have been as follows: "That the said electric hoist was firmly attached by bolts into a four-foot foundation, consisting of timber and cement and embedded in the ground. That the

said gallows frame, of which the crosshead and sheave wheel form an integral part, was firmly embedded in the ground in six or eight feet of dirt. That the engine-house and blacksmith shop were buildings firmly attached to the ground. That the three transformers were firmly bolted and affixed to the ground, and that the transformer house was affixed to the ground."

The plaintiff, in opposition to the motion, offered a number of affidavits.

From the affidavit of Emory J. Arnold, the purchaser at the execution sale, we quote the following: "The electric hoist was in the engine-house, standing upon a piece of framework or cribbing. It was in no way attached or affixed to the said framework or to the building. It was not attached by bolts or otherwise into a four-foot foundation or any foundation consisting of timber or cement or any other material embedded in the ground or otherwise. The gallows frame, with crosshead and sheave wheel, was in place over the shaft, and was not, and is not, firmly embedded in the ground in six or eight feet of dirt. It is not attached or affixed to the ground. The engine-house, which was built around and to cover the electric hoist, is a wooden building on sills, which sills are simply laid on the ground and leveled up with blocks and stones. It is in no way attached or affixed to the ground. The blacksmith shop is also a small wooden structure placed on sills which are laid on the ground without either blocks or stones. It ·is in no way attached or affixed to the ground. The transformer house is also a small wooden building erected on sills laid on the ground, and leveled up by blocks or stones, and is in no way attached to the ground. The three transformers stood, and now stand, upon the floor of the transformer house, and are not attached or affixed, in any way, to the said house or the ground."

The affidavit of S. G. Errett, in opposition to the motion, was to the following effect: "That upon the 3d day of August, 1909, he made a careful examination upon the ground of the buildings and other improvements situated· on the Third Chance mining claim, Goldfield Mining District, Nevada. The electric hoist was not then upon the premises. It formerly

stood in the engine-house. It stood upon a base or sub-structure, consisting of a frame or piece of cribbing seven feet ten inches in length, and seven feet six inches in width. This frame is constructed at the top of 2x8 inch timber, held together in each corner and in the middle of each side, where there is a cross-timber two inches by eight inches in size, by beams slipped over bolts, without nuts, such bolts running from the bottom to the top of such structure and extending about three and one-half inches above the top of the structure. The frame is partially above and partially below the floor of the engine-house, which floor is constructed around it, and was evidently built after the framework. The frame is partially above and partially below the surface of the earth. The bolts are without nuts, which have, at some time, been removed by splitting. The ends of one of the bolts show evidence of having been cut in the splitting of said bolts, and several pieces of split nuts are lying on the floor near the frame. The hoist evidently stood originally on the framework secured by these bolts, and was evidently at some time removed by cutting the nuts and raising the machinery from the bolts.

"The gallows frame is about thirty-two feet high; sills thirty-three feet long of 8x8 inch timber; braces of 6x6 inch timber; crosshead and sheave wheel being in place over the shaft. The gallows frame is placed in position on the brow of a hill. The sills rest upon the posts; such posts at the westerly end of the frame being over the slope of the hill and extending from the hill to the ground. The space in and around the gallows frame has been partly filled in, evidently by dumpings from the shaft.

"The engine-house * * * is set upon sills of timber two inches by four inches in size, which sills are simply laid upon the ground and leveled up by blocks or stones. It is in no way attached or affixed to the soil. The house could be removed by simply lifting it from the ground.

"The blacksmith shop * * * rests upon sills of 2x4 inch timber simply laid upon the ground. There is no floor, The house is in no way attached or affixed to the soil. It could be removed by simply lifting it from the ground.

"The transformer house * * * is built on sills of tim-

ber two inches by four inches in size, which sills are simply laid on the ground and leveled up with blocks or stones. It is in no way attached or affixed to the soil. It could be moved at any time by simply lifting it from the ground. The three transformers are in the transformer house, last above described. They simply stand upon the floor of the house, and are in no way attached or affixed to the house or ground."

The affidavit of E. A. Quinn, in opposition to the motion, set forth that under and by virtue of a certain written contract, of date November 27, 1906, the Nevada Power, Mining and Milling Company agreed to sell to the said defendant, Goldfield Third Chance Mining Company, the electric hoist, motor and transformers here in question for the sum of $2,750, payable one-third cash and the balance in deferred payments, the contract specifying that the title and right of possession to the said electric apparatus remains in the said power company until all payments shall be fully made, and that said apparatus shall remain the personal property of said power company whatever may be the mode of its attachment to the realty or otherwise, until fully paid for in cash. That a few days prior to the 30th day of July, 1908, the said power company, under the terms of said contract, entered into the said premises where said property was located, and 'removed the same therefrom as its property. That subsequently, to wit, on the 30th day of July, 1908, a settlement of said matter was made between said companies, and immediately thereafter, and during the first week in August, 1908, said machinery and material were returned by the said power company to the said Goldfield Third Chance Mining Company and placed in its position on said Third Chance mining claim.

What appears in the various affidavits, to the effect that the buildings and machinery were or were not attached or affixed to the realty, may be regarded as mere expressions of opinion or of little or no weight as evidence, in view of the fact that there is no substantial conflict in the evidence as to the manner in which the buildings and machinery were actually situated upon the ground. We think the lower court erred in holding that none of this property sold under the

execution could be regarded as a fixture. It is well settled that a mining claim is real property, and it cannot be disputed that a lode mining claim cannot be successfully operated without the use of buildings or machinery of a character similar to that involved in said sale.

Lindley in his work on Mines (2d ed. vol. 1, sec. 409) says: "It is unnecessary to enter into a detailed discusston of what constitutes fixtures. It has been frequently held that machinery, such as engines, boilers, hoisting works, mills, pumps, and things of a like character annexed to the soil for mining, become part of the freehold"—citing *Merritt* v. *Judd*, 14 Cal. 60; *Treadway* v. *Sharon*, 7 Nev. 37; *Roseville Alta M. Co.* v. *Iowa G. M. Co.*, 15 Colo. 29, 24 Pac. 920, 22 Am. St. Rep. 373.

In the case of *Treadway* v. *Sharon*, *supra*, this court held that a boiler, engine, and machinery, constituting a part of a steam sawmill put upon the land for the purpose of sawing up the timber thereon which had its foundation planted in the ground and the engine, boiler, and machinery were attached by bolts, shafts, and belts to the framework which was built upon such foundation, were fixtures, although it appeared that there was but a limited supply of timber on the land upon which the sawmill was put, and that it was the intention to remove the sawmill as soon as the timber was sawed. This court in that case said:

"Now, every sawmill may, sooner or later, exhaust the available timber in its immediate vicinity, yet it would hardly be contended that a sawmill as such is always and necessarily a chattel. That all the available ore in a quartz lode may be extracted is as true as that all the available timber near a mill may be sawed; and it rarely, if ever, happens that the machinery first erected on a ledge is suited or intended to do the work of hoisting and pumping from the deeper workings, which favorable developments may induce. Yet ever since the great case of *Fisher* v. *Dixon* it has been settled law that machinery annexed to the soil for mining becomes part of the soil, and in *Merritt* v. *Judd*, 14 Cal. 60, a small steam engine and pump were adjudged to be fixtures. If it was the intention in the latter case to work the ledge to any great depth, it must also have been the intention to replace this small engine

and pump with others, larger and of greater power. It cannot be, then, that an intention to remove at any time, however remote—for instance, when the greatest depth consistent with profitable working shall have been attained, or whenever more powerful machinery must be used—controls the act of annexation, or rebuts the presumption that thereby the chattel is made a part of the land.

"Then where shall the line be drawn? If a steam pump calculated to drain the mine to a depth of five hundred feet or a mill with timber for three years' sawing remain chattels, with how much power would the engine and with how much timber would the mill become a fixture? The mill in question, a large, well-equipped, and perfectly appointed steam mill, was actively operated nearly three years. The same body of timber might have supplied a smaller mill, poorly constructed, for many years. Would the latter become real estate, and the former remain a chattel? That it is the annexation, and not the intention, which controls in such a case as this, is shown by the law as to young trees temporarily set out in a nursery and intended for transplantation and sale. These are part of the realty; at common law, go with the land to the heir, and pass to a vendee of the land. (*Maples* v. *Millon*, 31 Conn. 598; *Lee* v. *Ridson*, 7 Taunton, 188; *Smith* v. *Price*, 39 Ill. 28, 89 Am. Dec. 284.)"

In the case of *Merritt* v. *Judd*, *supra*, an engine and pump situated upon the quartz lead and attached in the following manner: "Two timbers, ten or twelve feet long, and from two feet to thirty inches in diameter, were placed side by side upon the ground. They were only bedded in the ground sufficiently to make them level. On these bed timbers were placed a frame of four timbers, each about eight inches in diameter, the side timbers about seven feet long, and the end ones about three feet. These frame timbers were bolted or spiked together, and bolted or spiked to the bed logs. The boiler of the engine was spiked or bolted to this frame. The engine rested on the frame beside the boiler. The boiler, engine, and pump were attached together by the usual connections; the pump itself extending into the shaft. Over the

whole was a roof or shed, which was constructed merely for the protection or shelter of the machinery. The machinery was not attached to the building in any way, except that the pump was stayed by rods, reaching to the rafters of the roof"—were held to be fixtures.

The case of *Roseville Alta M. Co.*, *supra*, is a case very similar to the one at bar, in that the question involved in that case was whether a fifteen-horsepower engine and boiler, including smokestack, rope, and hoist, were, liable to sale on execution as personal property, the same being situated upon and used in the operation or development of a mining claim. The articles in question were in the following situation: "On the claim was constructed an engine-house, a shafthouse, and shed. Within the engine-house was erected the engine, placed upon three sets of timbers laid crosswise and lengthwise, sunk in the ground and earth tamped around them, and on these was placed a frame that the engine stood on which was bolted down to the timbers. The boiler was set about three feet from the engine on rockwork, and connected with the engine by the ordinary connections." The judgment of the lower court holding that the said engine and boiler were so attached to the land as to become fixtures and as such to be exempt from sale under the execution as personal property was affirmed.

The court, after citing and referring to the facts involved in the case of *Merritt* v. *Judd*, *supra*, said: "The court in its opinion, after carefully reviewing a number of authorities, concluded as follows: 'We think that the principle to be extracted from the modern cases covers the case at bar; that this apparatus was necessary to the working of the ledge; that it was attached for that purpose permanently to the soil, and its use accessory, if not essential, to the inheritance for its only valuable purpose—the extraction of the gold.' Such seems to be the situation of the property here in controversy. It must be admitted that, in order to enjoy the benefits of the mining claim, to develop the mine, and bring to the surface the ore, the engine and boiler here sought to be recovered were absolutely essential. Many cases can be found in the books in which a similar connection with realty made by the owner

thereof has been considered a sufficient annexation. (*Oves* v. *Ogelsby*, 7 Watts, 106; *Merritt* v. *Judd*, *supra*, and cases cited; *Noble* v. *Bosworth*, 19 Pick. 314.)

The trial court in its opinion rendered upon the motion expressed some doubt as to whether the electric hoist, considered apart from the contract of their sale, ought not to be regarded as a fixture, but expressed the view that as the defendant company had agreed with the power company that it should be regarded as the personal property of the power company, with right of removal until fully paid for, it was not in a position to claim the property to be a fixture. In this view we are unable to agree with the trial court. As against every one other than the power company, we think the defendant company had a right to claim the hoist as a fixture. (*Prescott* v. *Wells-Fargo Co.*, 3 Nev. 82.) The plaintiff and the purchaser at the execution sale certainly could not, we think, claim the hoist to be the personal property of the defendant by virtue of the contract with the power company, for so far as that contract had any force, by virtue of its terms, the hoist was the property of the power company until fully paid for.

This court in *Prescott* v. *Wells-Fargo Co.*, *supra*, by Beatty, C. J., said: "In my opinion property is either real or personal, according to its nature. Contract cannot make a chattel realty or realty a chattel. * * * But, if mere contract can convert potash kettles built into a wall in such a manner as to be firmly attached to the freehold, then it can also convert sawmills and granite walls into personalty. In my opinion, all fixtures whilst attached to the freehold are for the time being a part of the realty. No contract can change their nature. It is true there may be a contract allowing some one to take them off. Indeed, unless there be some contract, law, or custom allowing such removal, they are not technically fixtures."

At the time of the execution sale, the hoist was firmly bolted to the substructure upon which it rested. So firmly was it bolted that subsequently, when the power company assumed to exercise its right of removal, it apparently found it necessary to cut the nuts from the bolts. It is quite manifest that

the hoist, including its superstructure and the engine-house surrounding it, were as firmly affixed to the soil as their necessities required, and sufficiently so, considering the purpose for which they were used, to constitute the same fixtures.

The gallows frame, we think, was clearly a fixture. Even if its base had not been originally sunk into the earth further than to make it level and substantial for its use, we think would make no difference in this case. It is shown, however, that the case was covered to a depth of several feet with rock and earth taken from the shaft and dumped around it. This waste rock and earth did not cease to be a part of the soil simply because it had been removed from the shaft and its location changed. The gallows, hoist, and transformers were all connected and integral parts of one mechanism, essential to the operation of the realty as a mine, and are fixtures. It is unnecessary to determine whether all of the property sold at the execution sale constituted fixtures. It is sufficient to invalidate the sale if any of the articles so sold were fixtures.

Other questions raised upon the record it is unneccessary to determine.

The order appealed from is reversed, and the cause remanded, with directions to the trial court to enter an order vacating the sheriff's sale.