1838.

Baxter
v.
Lansing.

---

### Baxter vs. Lansing.

Where the lessor brought a suit at law against his tenant, to enforce a forfeiture of the lease, for a breach of the condition of the lease by cutting timber upon the demised premises, of very trifling value, and the tenant filed a bill in chancery against the landlord, and obtained a regular decree by default, for a perpetual injunction, restraining him from proceeding in the suit to enforce the forfeiture; but without prejudice to his right to sue upon the covenants in the lease, to obtain satisfaction for the actual damage sustained; *Held*, that the defendant was not entitled to have the default set aside and the decree opened, to enable him to make a defence to the suit in chancery, the only object of which defence was to enable him to proceed in the suit at law to enforce the forfeiture of the lease.

A court of equity will not lend its active aid to enable a party to enforce a penalty or forfeiture. It will not, therefore, set aside a regular decree by default, on the application of the defendant, for the mere purpose of enabling him to enforce a forfeiture in a suit at law.

It seems a court of equity can only relieve against a forfeiture, for a breach of condition contained in a lease, in cases where the act or omission, by which the forfeiture was incurred, was the result of an accident or mistake for which compensation can be made to the other party, or where the penalty or forfeiture is in the nature of a mere security for the payment of money, &c.

December 18.

THIS was an application on the part of the defendant to open the final decree, which had been made against him in this cause, and to permit him to come in and defend the suit. The complainant was the assignee of a lease given by the defendant; and the object of the bill was to obtain a decree for a perpetual injunction, restraining the defendant from proceeding at law to enforce a forfeiture of the lease, on the ground of the alleged breach of a covenant contained therein prohibiting the tenant from cutting down any timber, trees, or staddles, standing or growing upon the demised premises. The bill was taken as confessed, for the want

of an appearance by the defenhant; and a final decree thereon was afterwards regularly entered, and duly enrolled, restraining the defendant from prosecuting any suit to enforce a forfeiture of the lease on account of the alleged cutting of any timber, sticks, or staddles, prior to the filing of the complainant's bill. The subpœna was served upon the defendant personally, and he retained his son as solicitor to defend the suit. But the son, as he alleged in his affidavit, supposing that the complainant's solicitor could not obtain an order to take the bill pro confesso without serving upon the defendant, personally, notice of an order for him to appear, or after compelling such appearance by attachment, neglected to enter an appearance or to give notice of his retainer to the solicitor of the adverse party. The result of this neglect to enter an appearance, or to give notice that he was employed to defend the suit, was that neither the defendant nor his solicitor was aware of any proceedings in the cause, subsequent to the service of the subpœna, until one month after the final decree had been perfected by a regular enrolment thereof.

*H. P. Hunt,* for the complainant.

*D. Buel, jun.* for the defendant.

THE CHANCELLOR. It is hardly possible to conceive that any solicitor of this court should have been so ignorant of its practice, as not to know that the complainant could proceed, upon the personal service of a subpœna, without the necessity of serving notices of the subsequent proceedings in the cause upon the defendant, who had neglected to appear. I can therefore only account for the delay of the defendant's solicitor to give notice of his retainer, and to enter the defendant's apearance, upon the supposition that he believed the bill was in fact what he calls it in his affidavit, a bill of discovery. If he supposed it to be a mere bill of discovery to obtain the admission of facts to be used as a defence in the ejectment suit at law, and wished to delay the answer and discovery as long as possible, I can then account for his supposing that no advantage could be

obtained of his client until he had been compelled to appear and make the required discovery by his answer. But the intention of the solicitor, however, to drive the adverse party to an attachment, for the purpose of compelling the defendant to obey the process of the court, forms but a lame excuse to such solicitor upon an application to the favor of the court, when he afterwards finds that his client, instead of being guilty of the intended contempt, has lost the opportunity of defending the suit. And I have great doubts whether the court ought to interfere in such a case, after the enrolment of a final decree, even to let in a meritorious defence; where there was no countervailing consideration to be urged against the equity of the relief sought by the defendant's application.

The sworn answer which the defendant proposes to put in would probably have been a good defence to this suit if it had been interposed in time; according to the more modern decisions in relation to the power of this court to relieve against the consequences of a breach of a condition subsequent. In the case of *Northcote* v. *Duke*, (*Ambl. Rep.* 513,) Lord Northington said, in reference to this question, " I take the rule to be that in all cases where a person has broken a condition, and forfeited a penalty, equity will relieve if there can be a compensation. I think the court may relieve where the tenant cuts down timber." And he was certainly sustained in that opinion by the language of the court in some of the previous cases. But the decisions in the more recent English cases limit the active interference of the courts of equity, in behalf of the tenant, to those cases only where the act or omission by which the forfeiture was incurred was the result of accident or mistake, and where compensation can be made to the adverse party; or where the penalty or forfeiture, stipulated for in the lease, is in the nature of a mere security for the payment of money, &c. (*Hill* v. *Barclay*, 16 *Ves.* 402. 18 *Id.* 56, *S. C.* *Reynolds* v. *Pilt*, 19 *Id.* 134. *White* v. *Warner*, 2 *Mer.* 459. *Bracebridge* v. *Buckley*, 2 *Price's Rep.* 200.)

These parties, however, stand in a very different situation at this time from that in which they were placed at the

commencement of this suit. The defendant then was proceeding at law to enforce his legal right to a hard and onerous forfeiture, for a comparatively trifling injury. And he had the technical legal power to exact his pound of flesh, unless the complainant could induce this court, in the exercise of a legitimate authority, to lend its active aid to compel the defendant to relinquish the forfeiture, and to accept a compensation in damages in lieu thereof which would be only a fair equivalent for the actual damage sustained by the breach of the covenant. Now, by a proceeding on the part of the complainant which was perfectly regular, the technical legal rights of the parties are reversed. The complainant has obtained a decree by which the defendant is deprived of the power to enforce the onerous forfeiture, for any breach of the covenant which had occurred previous to the filing of the bill; but he is left at perfect liberty to recover a full compensation in damages, by an action of covenant. The defendant is also left in the full possession of his legal right, under the lease, to insist upon a forfeiture if there should be any future breach of this covenant. In this situation of the case the defendant applies to the equity and justice of this court, to lend him its aid in removing the technical bar which the decree has placed in his way, and thereby to enable him again to insist upon the fatal penalty—a forfeiture of the complainant's whole estate. In answer to this application on the part of the defendant, the counsel for the adverse party interposes the fixed and inflexible rule that a court of equity will not lend its active aid to enable a party to enforce a penalty or forfeiture, And as the defendant, after a final decree in favor of his adversary, is compelled to ask that as a matter of mere favor, which in a different stage of the suit he might have been permitted to insist upon as a matter of strict legal defence to the complainant's bill, the court, acting upon the inflexible rule above stated, will not grant his application if the sole object of it is to enable him to enforce a forfeiture. This court acted upon that principle in the case of *The Fulton Bank* v. *Beach*, (1 *Paige's Rep.* 429,) by refusing to interfere in favor of a defendant who had made a slip in setting up the

defence of usury to the complainant's bill, unless such defendant would consent to waive the forfeiture or penalty. And that decision was afterwards affirmed upon appeal by the court of dernier resort. (3 *Wend. Rep.* 573.)

The only object of the defendant in wishing to open the decree in this case is to enable him to enforce the forfeiture at law, if he succeeds in his defence to this suit; for the costs which he would have to pay to the adverse party, if he was let in to defend, including the costs of opposing this application, would be equal to the whole costs which he is now bound to pay under the decree. It would therefore be a useless expense to both parties, to permit a defence to be made in the present suit upon the terms of the defendant's agreeing to waive the forfeiture and to pay such costs. Better justice will be done to both parties by denying this application altogether, without any costs to the complainant; and by leaving the defendant to recover a compensation, for the few trees which have been cut, by an action at law upon the covenant in the lease. The application to open the decree is therefore denied.