## KEOGH VS. DANIELL.

In an action by a lessor to enjoin the removal of a wooden building from a demised lot, situate in the city of Milwaukee, it appeared that the lot was unimproved at the date of the lease; that the building was erected by the lessee

so as to be capable of removal without injury to the freehold, and that at the date of the lease and for several years before, a general *custom* prevailed in said city, that tenants leasing naked ground and making improvements thereon, might, in the absence of any restriction in the lease, remove such improvements at or before the expiration of the term: *Held*, that the lease in this case being silent on the subject, the parties must be presumed to have contracted with reference to the custom, and that the lessee had a right to remove the building at any time before the expiration of his term.

A stipulation in the lease, that the rent should be paid, "except in case of the destruction of the premises by accidental fire," and that the tenant should deliver up the premises at the end of the term, "use and wear thereof, and damage by accidental fire, &c., only excepted," is not regarded as being inconsistent with said usage, or as showing an intention of the parties to make a contract variant therefrom, especially as in drawing the lease, the parties used a printed form in general use, in which the stipulation referred to occurred, and the rent is of the small amount which would probably be paid for a lease of the ground.

The lease in this case contained a covenant that the lessee would not assign it without the lessor's consent, and a stipulation that on breach of any of his covenants, the lessee should forfeit all right and title to the demised premises, and the lessor *might* re-enter and expel him therefrom; and it appeared that the lessee had assigned the lease to the defendant and given him a mortgage on the building, without consent of the lessor, but the defendant was in possession of the premises at the commencement of the suit, claiming to hold under the lease, and there was no proof that the lessor had made a re-entry into the premises, or taken any steps to claim or enforce a forfeiture before bringing suit: *Held*, that the term had not expired, and the right to remove the building remained.

APPEAL from the Circuit Court for *Milwaukee* County.

This was an action to enjoin *Daniell*, the appellant, from selling or removing a wooden dwelling house from a lot in the city of Milwaukee. The complaint, which was filed on the 29th of September, 1859, stated that on the 1st day of February, 1857, the plaintiff, by his guardian, *Thomas Keogh*, of the city of Milwaukee, executed to one John B. Weld, of the same city, a lease of the lot referred to, for the term of six years from that date, at a rent of twenty-five dollars a year, to be paid in quarterly instalments during said term, "except in case of the destruction of said premises by accidental fire;" with covenants, on the part of the lessee, not to assign or under-let the premises, nor otherwise part with said lease, without the written consent of the lessor, and to deliver up said premises at the end of the term, "reasonable use and wear thereof, and damage by accidental fire, or other accidents not happening through the neglect of the lessee, only excepted," with a stipulation, that if default should be

made by the lessee in the performance of any of his coven ants, he should forfeit all title to the demised premises, and it should be *lawful* for the lessor to re-enter the same, and expel the lessee therefrom. The complaint further stated, that the lessee had broken his covenants, by neglecting and refusing to pay the rent for two quarters next before the commencement of the suit, and by leasing said premises to said *Daniell*, without the consent of the lessor, and also, that said *Daniell* had advertised to sell the building on said premises, by virtue of a chattel mortgage, alleged to have been executed to him by said Weld, and to remove the same from the premises. Prayer, for a perpetual injunction and for general relief.

Upon the filing of the complaint, the circuit court, on the *ex parte* application of the plaintiff, made an order restraining the said *Daniell* from selling or removing the dwelling house, situate on the lot referred to, until the further order of the court.

The answer of *Daniell* denies that the lease delivered to Weld contained a covenant not to assign or under-let the premises without the consent of the lessor, but avers, that in drawing said lease, a printed form with blanks was used, and that the portion of the printed form containing that covenant was erased before the execution of the lease. It also denies that Weld had broken any of the covenants in said lease, and avers that all the rent which had fallen due thereon, had been paid or tendered to the plaintiff before the commencement of the suit, and that the plaintiff had refused to receive the rent for the last two quarters. It further states, that at the date of the lease, there was no building on the demised premises; that the dwelling house referred to was built by said Weld, and is not a permanent structure so attached to the freehold as to be inseparable therefrom, but is a light wooden building, placed on the said lot with reference to, and for the purpose of, a temporary occupation and subsequent removal, and is so constructed as to be capable of being easily removed, without injury to the freehold. It also avers, that there is a common or usual *custom*, which has generally for a long time prevailed, and

still generally prevails, in the city of Milwaukee, by which lessees erect upon ground leased for a term of years, dwelling houses for their occupation during the term, and remove the same at their pleasure, at or before the expiration of such term.

The answer further states, that before the commencement of this suit, said Weld had executed to *Daniell* a chattel mortgage upon said dwelling house, and had assigned to him the said lease, as security for a loan of money, and that the said *Daniell* had taken possession of said house, by virtue of said mortgage, for the purpose of selling the same, to make the amount of said loan, in pursuance of a power contained in the mortgage. The answer further states, that said *Daniell* had taken possession of said lot, under said lease, and the assignment thereof, and avers that the plaintiff had given no notice of the termination of said lease, or of his intention to terminate the same, by reason of any of the alleged breaches of the covenants therein, and that the plaintiff had not demanded possession of said premises, or taken any steps to resume possession thereof. The answer also contained an offer to pay the rent which was in arrear.

After the filing of the answer, a rule to show cause why the injunctional order which had been granted, should not be dissolved, was submitted upon the complaint and answer, and upon the following proofs:

1st. The affidavits of Ephraim Mariner and Joshua Hathaway, who testified that there was a common and prevailing custom, at the time of the execution of the lease in this case, and for several years before, in the city of Milwaukee, that tenants, taking leases upon unimproved lots, and making improvements thereon, might remove their improvements at or before the expiration of the term, though no provision were made in the leases for such removal.

2d. The note of Weld in favor of *Daniell*, for eight hundred dollars and interest, due September 15th, 1859, and a mortgage executed to him by Weld, upon the building referred to in the complaint, with power to the mortgagee to take possession of said property and sell the same, in case of the non-payment of said note at maturity.

3d. The affidavit of *Thomas Keogh*, presented by the plaintiff's counsel, and sworn to October 21st,1859, which states that the lease described in the complaint did contain a covenant on the part of the lessee, not to assign or underlet the demised premises, or otherwise part with the lease, or the premises leased or any part thereof, without the written consent of the lessor; that said covenant was not erased before the execution of said lease, and has not since been changed by erasure or otherwise, with his consent; that on the first day of August, 1859, the sum of twelve dollars and fifty cents became due to the plaintiff from said Weld, for the rent of two quarters, and that Weld has never paid or tendered the same, and that said *Daniell* had not tendered any part of said rent on behalf of said Weld; that since the said first of August, said *Daniell* called on the deponent, and offered to pay the sum due for rent, but when asked as to his authority to make payment in behalf of Weld, he produced said lease, which he claimed had been assigned to him, and under which he made the tender as tenant, and the deponent refused to receive the money thus tendered, through fear of recognizing *Daniell* as his tenant; and that he has, since the first of August, given notice of his intention to terminate the lease, by delivering to one Wilkins, the person then in possession of the premises, a written notice to quit, and by demanding of said Wilkins the keys of said dwelling house.

The circuit court, upon the hearing of the rule to show cause, refused to dissolve the temporary injunction, and made an order discharging said rule, with costs, from which decision and order said *Daniell*, having duly excepted thereto, appealed to this court.

*Waldo, Ody & Van*, for appellant:

The term of the tenant was not expired. It is only averred in the complaint that a cause of forfeiture has occurred, but not that a forfeiture has been adjudged, nor even that the plaintiff had elected to forfeit the lease. It is proved by the defendant that the back rent had been tendered and refused, and the defendant is still in possession. It was the general *custom* at Milwaukee at and for many years before the date of this lease, to give ground leases of vacant lots,

and to allow the tenant, at his pleasure, to remove such buildings as he should erect thereon, without any special agreement. This custom is sufficient to establish the right to make such removal. Woodfall's L. & Ten., 219; *Van Ness vs. Pacard*, 2 Peters, 148; Taylor's L. & Ten., §§ 538, 540, 542, 549, 554, and cases cited in the notes. The house can be readily removed without injury to the freehold. The rule of law now is, that a tenant for a limited term, who makes improvements for ornament, domestic convenience, or to carry on trade, may at any time before his term expires, rightfully remove such improvements, when it can be done without material injury to the inheritance. Taylor's L. & Ten., §§ 544, 546, 547, 548; 2 Peters, 140; 7 Barb., (S. C.), 263; 4 Pick., 310.

In cases between landlord and tenant, the rule is more liberal to the tenant than that applied in cases between grantor and grantee of the fee, or between heir and executor. *Walker vs. Sherman*, 20 Wend., 636. The tenant may make the removal at any time before he surrenders the possession of the premises. Taylor's L. & Ten., § 551; *Penton vs. Robart*, 2 East., 88; *Davis vs. Jones*, 2 B. & A., 165; *Weston vs. Woodcock*, 7 M. & W., 18; *Ellis vs. Paige*, 1 Pick., 43, 49; *White vs. Arndt*, 1 Whart., 91. If the thing in question is so constructed as not to become affixed to the land, it is a mere chattel, and cannot be treated as a fixture. Taylor's L. & Ten., § 548; *Van Ness vs. Pacard, supra; Walker vs. Sherman*, 20 Wend., 536, 657. Movable fixtures may be sold on execution against the tenant, or he may sell or mortgage them, and on his death they go to his personal representatives. Taylor's L. & Ten., § 549. *Reynolds vs. Shuler*, 5 Cow., 323, 327.

The proper test is, "could this property be removed without any injury to the freehold?" 3 McCord, 353; 9 Conn., 63; 20 Wend., 640; 14 Mass., 352.

*Coon & Cotton*, for respondent:

The order in this case does not decide whether the plaintiff shall be entitled to a permanent injunction, but only retains the temporary injunction till the final decision of the action. Where the defendant, in his answer to an injunc-

tion bill, admits the equity of the bill, but sets up new matter of defense, the injunction will be continued to the hearing. 1 Barb. Ch. Pr., 610, and cases there cited. That is precisely this case. If the defendant had demurred to the bill for want of equity, and then moved to dissolve, it would have presented another case; but he sets up new matter of defense by way of answer, and affidavits, all of which we must have an opportunity to contest on the trial. There was probable cause to continue the temporary injunction till the final determination of the case, because: 1st. From the terms of the lease, and the facts, even as they now appear, and without any forfeiture by the lessee, neither the assignee of the lease, nor the lessee himself, had any power to remove the building. The tenant covenants to pay the rent, except "in case of the destruction of the said premises by accidental fire," and "to quit and deliver up said premises" to the plaintiff at the end of the term, "reasonable use and wear thereof, and damage by accidental fire, or other accidents not happening through the neglect of the tenant, only excepted." As no damage could happen by fire to the lot, these words must refer to the building to be subsequently erected, which was therefore a part of the "premises" which he was to deliver up at the termination of the lease. 2d. All the decisions agree that whatever fixtures the tenant has a right to remove must be removed before his term expires. Taylor's L. and Ten., § 551, and cases cited. In this case his term had expired by forfeiture before the action. He failed in his covenant to pay the rent, and the same has been demanded and payment refused. This is positively sworn to in the complaint, and though denied by the answer, we may establish it by proof on the trial. He has violated the covenant that he would "not assign or underlet the premises, or otherwise part with the lease," without the written consent of the lessor. The answer admits that the defendant has taken possession of the lot by virtue of said lease and the assignment thereof to him. It is stipulated in the lease, that upon a breach of any of his covenants, the lessee shall forfeit all right to the lease and the premises demised, and that the lessor may re-enter and expel him there-

from. The lessee had no right to thrust a new tenant on the plaintiff under the pretense of indebtedness, or any other pretense. As to forfeiture of lease, see Taylor's L. & Ten., § 491, and the sections under the head of "forfeiture;" and as to the principle that tenant cannot remove fixtures after forfeiture or expiration of term, § 551, and cases there cited.

June 19.      *By the Court,* DIXON, C. J. The question, whether, upon general principles, fixtures of a chattel nature, erected by a tenant upon demised premises, for any other purpose than that of *ornament, domestic convenience,* or to *carry on trade,* may be removed by such tenant, does not necessarily occur in this case. The tendency of the later American decisions seems clearly to favor such right of removal, but the law on the subject is not well settled, and should it hereafter arise, it will deserve a careful consideration.

In the present case, we consider the usage of the city of Milwaukee, in tenancies like the one under consideration, so clearly established, that we are relieved from determining, upon the principles of the common law, what the rights of the parties would be without it. The general custom of many years' standing in that city, in the absence of any agreement to the contrary, to allow lessees of naked or vacant lots, upon what are commonly called *ground leases,* to erect buildings, and other improvements upon them, and to remove such buildings and improvements at or before the expiration of their leases, is alleged in the answer and was clearly proved. Its existence is not contradicted or denied by the respondent. It is a valid custom, with which the parties to the lease in question must be supposed to have been acquainted, and to have contracted with reference to it in respect to all matters about which their contract is silent. *Van Ness vs. Pacard,* 2 Peters, 148.

It is contended, however, by the counsel for the respondent, that the contract in question is not silent upon the subject matter of the usage; that there are clauses in the lease which are inconsistent with the usage, and to which it must yield. If this be so, the custom cannot prevail. To prove this, two covenants are relied upon; one, in which the lessee

June Term,
1860.

KEOGH
v.
DANIELL.

agrees to pay the rent, except in case of the destruction of the premises by accidental fire; the other, in which he promises to quit and deliver them up at the end of the term, reasonable use and wear thereof, and damages by accidental fire, or other accidents not happening through his neglect, only excepted. It is said that the expressions "use and wear," and "damages by accidental fire," can only be applied to buildings and other improvements of a perishable nature, and not to the lot, which is indestructible by such means, and that therefore, by implication from these words, the subsequently erected buildings became a part of the premises, and cannot be taken away. It is to be observed, that in drawing the lease, the parties used one of the printed forms in general use, in which the covenants referred to occurred in print. It is also further to be observed, that the grant or demise itself was of a bare lot or piece of land, described as the north thirty feet of the south one-third of quarter block sixty-nine, in the first ward. No mention is made in it of buildings or improvements of any kind. The rent is small, such as would be paid for a mere lease of the ground. The proof clearly shows, and it is not disputed, that the premises, at the time of the demise, were wholly unimproved. Under these circumstances we do not think that the subsequent occurrence of the apparently inconsistent words, ought to be permitted to change or enlarge the meaning of the word "premises," in connection with which they are used, so as to make it include buildings and other improvements where none are mentioned or contemplated in the granting clause; but that it should be understood in the same sense that it would have been had they not occurred, and held to mean and refer to the *premises demised*, in the situation in which they were when the lease was taken. It seems to us clear that this was the intention of the parties, and it is not inconsistent with the whole instrument. If it were otherwise, the destruction by accidental fire, of the most trivial and unimportant building subsequently placed upon the premises by the lessee, would operate to discharge him from the payment of rent, which certainly was not intended by the lessor. It was not the design of either, that

the payment of rent should depend at all upon the future erection or destruction of buildings or other improvements. The building in question being, therefore, according to the custom, a moveable fixture, is to be considered the personal property of the tenant, which he may sell or mortgage, and which may be seized and sold on execution against him; and the lessor having, by the terms of the lease, no lien upon it for the rent, it only remains to be determined whether the tenant or the defendant as his mortgagee, had, at the time of the commencement of this action, forfeited or lost their right of removal. The usage being established, and the building being found to have been erected in accordance with it, the rights of the parties stand on the same footing that they would if it were a building erected to carry on trade, or for other purposes, where, by the common law, the tenant would have the privilege of removal. *Van Ness vs. Pacard, supra.*

The rule in such cases is, that the tenant may remove his fixtures at any time during the term, or even after its expiration, provided he yet remain in possession; but if he quit the possession without such removal, it is considered an abandonment of his right. Case last cited, and *Penton vs. Robart*, 2 East., 88. It is contended that the alleged non-payment of rent, and the assignment of the lease and underletting of the premises by the tenant to the defendant, as a further security for the money loaned by him, without the consent of the plaintiff being first obtained in writing, was a forfeiture of the lease, by which the term expired before the action was commenced, and that, therefore, the right of removal was gone. The lease contains a covenant for the payment of rent at the times therein specified, and against assigning or underletting the premises, and provides that if the lessee make default in any of the covenants, he " shall forfeit all right and title to the lease and the premises therein demised, and every part thereof;" and that in that event, it shall be lawful for the plaintiff to re-enter and repossess himself of the same, and expel the lessee therefrom. The objection to the argument is, that the case only shows a *cause* of forfeiture, and for the expulsion of the tenant, but does not show that he, or those who claim under him,

have been, in fact, expelled, or that the plaintiff has re-entered, or repossessed himself of the premises. The tenant, and those claiming under him, were still in possession, claiming the right to hold under the lease, and until it was judicially determined that a forfeiture had taken place, and he and they were ousted, and the plaintiff repossessed by legal process, the term was not expired, and the right of removal remained. In *Penton vs. Robart*, the original term had expired, and the landlord had recovered judgment in ejectment against the tenant, but the tenant remained, in fact, in possession, and being so, the court held that he was not liable, in an action by the landlord, for removing fixtures, erected for the purpose of trade, and that he might lawfully do so. It appears to us, therefore, that the equities of the complaint were fully answered, and that the plaintiff was not entitled to a continuance of the injunction, and that it should have been dissolved.

The order of the circuit court is reversed, with costs.

[NOTE.—In relation to leases for years, as well as those for life, the happening of a *cause* of forfeiture, does not render the lease void, but voidable only, at the election of the lessor. *Clark vs. Jones*, 1 Denio, 516. Although by the condition of a lease it is provided that if any of the covenants on the part of the tenant are broken, the unexpired term shall cease, if the lease also contains a clause that, in case of the non-performance of such covenants, the landlord *may* re-enter, the lease is voidable only at the option of the landlord, upon a breach of such covenants, but is not void. *Stuyvesant vs. Davis*, 9 Paige, 427. Such a clause in a lease is a condition, and cannot be construed as a limitation. *The Fifty Associates vs. Howland*, 11 Met., 99. A breach in the condition of a deed, which is not a limitation, but gives a mere right of re-entry, does not avoid the estate. The estate is terminated in such a case by the re-entry of the lessor. *Spear vs. Fuller*, 8 N. H., 174; 11 Met., *supra; Arnsby vs. Woodward*, 6 Barn. & Cress., 519. To entitle the lessor to re-enter for non-payment of rent, the common law required a demand of the exact rent due, on the day it fell due, at a convenient time before sunset. *Van Rensselaer vs. Jewett*, 2 Coms., 141; *Jackson vs. Harrison*, 17 John. 66. A court of equity will not, generally, lend its active aid to enforce a forfeiture (*Baxter vs. Lansing*, 7 Paige, 350), but regards the clause of re-entry for the non-payment of rent as a mere security for its payment, and will interfere in the tenant's behalf, upon his satisfying the rent due, and any damages which the landlord may have sustained by his default. Taylor's Land. and Ten., 326; Story's Eq. Jur., § 1315.—REP.]