his testimony was not, therefore, available, and that the motorman of the car was not then in the employ of the defendant, and could not be found. The conductor testified that after the car had passed 19th street the plaintiff discovered such fact, immediately arose, and started to leave the car, which was then in motion, and that he tried to stop her, but failed, and, in getting off the car, she was thrown to the street between 18th and 19th streets. In this respect he was corroborated by the three passengers and by Devey, the night watchman. It is, therefore, evident that the testimony of all the defendant's witnesses was clear and decisive to the effect that the plaintiff attempted to alight from the car when it was between 19th and 18th streets; that she was thrown to the pavement in making such attempt, and received the injuries of which she now complains. The testimony of the two policemen called in her behalf tends also to corroborate the story told by the defendant's witnesses, as there is little disparity between their testimony and that given by the defendant as to where the plaintiff lay in the street after the accident, and it seems to follow, as an inevitable conclusion, that she could not have been in the position where she lay unless she attempted to alight from the car after it had passed 19th street.

The right of the plaintiff to recover, therefore, came to rest upon her unsupported oral testimony, contradicted by all the other witnesses, both on the part of the plaintiff and the defendant and by the circumstances of the case. Under such circumstances the verdict ought not to be permitted to stand. The judgment and order should, therefore, be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

## WHITMORE v. WOODLAWN CEMETERY.

(Supreme Court, Appellate Division, First Department. April 18, 1902.)

DEEDS—CONDITIONS SUBSEQUENT—BREACH—CONDEMNATION—RIGHTS OF PARTIES.

A cemetery association was incorporated under Act 1847, as amended by Laws 1853, c. 122, directing the application of half the proceeds of lots sold to the payment of the purchase price. Certain land was conveyed to the association under an agreement reciting the fact of the incorporation under such statute, and specifying the fractional part of the whole tract of which each grantor was owner, and that the grantors were to be paid by receiving half the proceeds of lots sold from the tract. A portion of the lands was condemned for street purposes. *Held*, that the grantors were entitled to one-half the proceeds of the condemnation.

Ingraham, J., dissenting.

Action by J. Howard Whitmore against the Woodlawn Cemetery. Case submitted on an agreed statement of facts, under Code Civ. Proc. § 1279. Judgment for complainant.

The question submitted is as to the proper disposition of a fund arising from the taking of certain lands of the defendant by the city of New York under condemnation proceedings. The defendant is incorporated under the general law entitled "An act authorizing the incorporation of rural cemetery associations," being chapter 133 of the Laws of 1847, and the various acts.

amending the same. The defendant corporation was organized December 31, 1863. By section 7 of the act of 1847, as amended by chapter 122 of the Laws of 1853, it was provided as follows: "One half at least of the proceeds of all the sales of lots or plots shall be first appropriated to the payment of purchase money of the lands acquired by the association until the purchase money shall be paid, and the residue thereof to preserving, improving and embellishing the said cemetery grounds and the avenues and roads leading thereto, and to defraying the incidental expenses of the cemetery establishment; and after payment of the purchase money and the debts contracted therefor and for the surveying and laying out of the land, the proceeds of all future sales shall be applied to the improvement, embellishment and preservation of such cemetery and for incidental expenses, and for no other purpose or object unless expressly authorized by law. Associations formed under this act · may also agree with the person or persons, from whom the cemetery lands shall be purchased, to pay for such lands, as the purchase price thereof, any specified share or portion not exceeding one half of the proceeds of all sales of lots or plots made from such lands, in which case the share or portion of such proceeds so agreed upon not exceeding one half thereof, shall be first appropriated and applied to the payment of the purchase money of the land so acquired and the residue thereof shall be appropriated to preserving, improving and embellishing the said cemetery grounds and the avenues, paths and roads therein and leading thereto and to defraying the incidental expenses of the cemetery establishment. In all cases where cemetery lands shall be purchased and agreed to be paid for in the manner hereinbefore provided, the prices for lots or plots specified in the by-laws, rules and regulations as adopted by said association shall not be changed without the written consent of a majority in interest of the persons from whom the cemetery lands were purchased, their heirs, representatives or assigns." The lands owned by the defendant were conveyed to it by various conveyances, all reading practically alike, and, contemporary with each of such conveyances, agreements were made between the grantors and the cemetery, all of which agreements recited the fact that the cemetery was incorporated under the acts hereinabove set forth, and that the grantors had conveyed certain lands to the cemetery, specifying the fractional part of the whole grant of which each grantor was the owner, and that the grantors were to be paid for the sale of the said lands to the cemetery by receiving, as the purchase price therefor, "one-half of the proceeds of all sales of lots or plots made from such lands." The said contemporaneous agreement further provided that the lands thus conveyed should be subdivided into lots and plots, as required, avenues, walks, paths, and alleys laid out therein to be sold under a schedule of prices therein stated; and it further provided as follows: "That the party of the first part (the cemetery) will pay to the parties of the second part (the grantors) for the said lands, as the purchase price thereof, one-half the proceeds of the sales of lots and plots made from the said lands." The agreement wherein the lands in question were described stated that the said one-half the proceeds which was to be given to second parties should be divided into 12,500 equal shares, and distributed among the second parties as therein stated. Each party of the second part was then given a certificate showing the numbers of shares to which he was entitled, the following, with the blank properly filled, being a copy thereof: "This certifies that —— —— is entitled to —— shares in the Woodlawn Cemetery, transferable only upon the books of the cemetery association upon the surrender of the certificate." The plaintiff is the rightful holder of one of said certificates, showing the amount of his interest in the premises to be 210/12,500. Prior to 1883 the lands in question became part of the city of New York, and in the year 1895 the city commenced a proceeding to acquire lands by condemnation for an extension of a street or avenue through the lands in question. The condemnation proceeding resulted in the street being laid out and an award to the cemetery, which left it, after all expenses were paid, the sum of $110,354.16. The question here presented is as to the proper distribution of this fund. There are no stockholders in the cemetery association. The only parties in interest are the association on one side,

and the holder of the certificates, of whom the plaintiff is one, on the other. The plaintiff claims that he is entitled to 210/12,500 of the proceeds of the fund in question, or, at least, one-half of that amount.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

William B. Hornblower, for plaintiff.

David Willcox, for defendant.

HATCH, J. We think the questions presented by this submission may be solved with approximate accuracy when the title under which the cemetery association holds is clearly understood. By the provisions of the statute, the land is dedicated, when acquired by the corporation, to cemetery purposes. As between the purchaser of a lot and the association, the former only acquires an easement in the lot so purchased for burial purposes. Such easement, however, is irrevocable, and continues during the time that the plots or lots continue to be used for such purpose. The title to the land, however, remains in the cemetery association, and it holds the legal title, subject to the exclusive right of the lot holder. Buffalo City Cemetery v. City of Buffalo, 46 N. Y. 503. No question, however, arises in this submission out of the relations existing between the owner of the burial plot and the corporation or the certificate holder. The whole question is, therefore, to be solved based upon a consideration of the rights and liabilities of the corporation upon one hand, and the certificate holders upon the other.

The corporation was authorized by the statute (Laws 1847, c. 133) to acquire for cemetery purposes 200 acres of land, and by special act (chapter 325, Laws 1864) was further authorized, upon certain conditions, to take and hold for the same purpose not exceeding 250 acres of additional land. The corporation was organized, and the lands acquired, by virtue of the provisions of these two acts. The question, therefore, is, what title did the association acquire by virtue of the contracts of conveyance? By the provisions of section 4 of the Laws of 1847, it is provided that the lands acquired by the corporation are "to be held and occupied exclusively as a cemetery for the burial of the dead." Then follows provision for surveying and subdividing the same into lots or plots and the laying out of paths, alleys, and walks, as the trustees of the association might determine upon, for the purpose of carrying out the provisions of the act under which the land was acquired. The conveyance which was taken by the cemetery association follows the terms of the statute, recites the purpose for which the lands were conveyed, and states, as the consideration therefor, that the said lands shall, from time to time, as may be required, be surveyed and subdivided into lots or plots for burial purposes, and avenues, paths, alleys, and walks may be constituted for ornamental and other purposes; the grantors being entitled to have and receive, as a consideration for the conveyance, one-half of the proceeds of all sales of plots and lots. It is, therefore, evident that there was attached to this conveyance, both by its terms and by the provisions of the act under which the lands were acquired, a condition subsequent,

75 N.Y.S.—54

which, upon a failure to perform, might defeat the conveyance and authorize a re-entry.

It was said in Rawson v. Inhabitants of School Dist. No. 5, 7 Allen, 125, 83 Am. Dec. 670, that:

"Where a deed is made in express terms for a specific purpose, or in consideration of an act to be done or service rendered, it will be interpreted as creating a conditional estate. But this is an exception to the general rule, and is confined to cases where the subject-matter of the grant is, in its nature, an annuity; as of an annuity to be paid for service to be rendered, or a right or privilege to be enjoyed. In such case, if the service be not performed, or the enjoyment of the right or privilege be withheld, which formed the consideration of a grant, the grantor will be relieved from the further execution of the grant, to wit, the payment of the annuity."

In the case cited, one Daniel Tafft granted to the inhabitants of the town of Uxbridge a burial plot by a deed which recited "for and in consideration of the love and affection I bear to ye town of Uxbridge, and for diverse other valueable considerations me moveing hereunto," "said land being improved for a burying place; to have and to hold the said given and granted premises, with all ye appurtenances, privileges, and commodities to the same belonging, or in anywise appertaining, to the said town of Uxbridge forever, to their own proper use, benefit, and behoofe, for a burying place forever." It was held that this deed did not create a condition subsequent, for the reason that the granted premises were not to be so used as to inure specially to the benefit of the grantor and his assigns, but was in its nature general and public; that there were no words indicating an intent that the grant was to be void if the declared purpose was not fulfilled; and that, as it appeared that the premises granted had been used for a burial place at the time of the execution of the deed, it might have been so conveyed for a consideration. The town having removed the dead, and devoted the land to school purposes, it was held that such use did not defeat the grant, and no right of action could be maintained by the heir of the grantor for a re-entry for breach of the condition of the deed. But the case clearly recognizes that, where the whole consideration for the grant is the accomplishment of a specific purpose, and the enjoyment of the estate granted is made dependent upon the performance of the act for which the land is taken, such a deed is a conditional one, and may be defeated for failure to comply with the condition.

In the present case, both the grant and the statute provide and require that the land conveyed shall be devoted to a specific purpose, which inures to the benefit of the grantors, and which in its nature is executory; therefore, the same is conditioned upon the performance of the act which furnishes consideration for the grant. It is true that conditions subsequent, by which an estate is defeated, are not favored in the law; but where the condition is clear and unequivocal, and its performance remains executory, a condition subsequent operates with as much force as any other, and is to be supported and upheld. The very necessity of this case required that the condition upon which the grant was founded must be subsequent, as it remained executory, and consequently compliance there-

with by execution was annexed to the substance of the grant, and the estate would be defeated if compliance were not had with its terms.    2 Washb. Real Prop. 2; Tied. Real Prop. § 271 et seq.; Laberee v. Carleton, 53 Me. 211.

It cannot be doubted in the present case but that if this association had attempted to make conveyance of these lands for other purposes than that of burial in the method specified by the statute and by the grant, it would be in violation of the condition which was the consideration of the grant, would create a forfeiture and authorize a re-entry by the grantor or his heirs.    Such conveyance would not only violate the terms of the grant, but also the terms of the statute.    Good title could not be acquired by a purchaser, as he would necessarily be chargeable with notice of the condition which was attached to the grant and under which the grantor held the same.    Such attempted disposition of the property might be enjoined at the instance of the grantor or any person having a beneficial interest in the fulfillment of the condition.    Such beneficial interest exists in this case in favor of the grantor and the certificate holders, and is of such a character as authorized them to insist upon the performance of the same.

All grants of land, with few exceptions, are held subject to the exercise of the sovereign power of the state, the only limitation being that when the state exercises such power, or authorizes its exercise, compensation for the property taken thereunder must be made.    The condition of this land was such that at the time of the exercise of the sovereign power it was subject thereto, and it, of course, must be held that both parties granted and received this property subject to its exercise.    This being the condition under which the lands were held, the corporation could not be charged with a breach of the condition under which it held the land, so as to work a forfeiture of the grant and authorize a re-entry for the breach.

It is clear, however, that the rights of the grantors and also of the corporation in the land were not defeated by reason of such condition.    The purpose for which the land was to be devoted had failed.    It was rendered impossible of performance by an act of supreme power, but such condition did not deprive the parties of right to compensation for their interest in the land.    Neither did it authorize the appropriation of the whole of the proceeds by one to the exclusion of the other.    Such result would be manifestly inequitable.

It is a well-settled equitable rule to grant relief in case of forfeiture where the breach arises out of an accident, and where the damages resulting therefrom can be accurately estimated by the court.    Under such circumstances, equity will prevent a forfeiture and decree in place thereof compensation in damages.    Tied. Real Prop. § 279; Livingstone v. Tompkins, 4 Johns. Ch. 415, 8 Am. Dec. 598; Baxter v. Lansing, 7 Paige, 350; Stone v. Ellis, 9 Cush. 95.    The rule is not different when there is a breach of a condition arising out of the exercise of sovereign power.    Under such circumstances, the rights of the parties are to be protected by the application of equitable principles, and the effect of the forfeiture will be admeasured in money, according to the respective rights of the parties, where that may be

done.  There is not the slightest difficulty in this case in precisely and accurately determining the rights of the parties in and to this land or to the substituted proceeds.  The land itself could no longer be devoted to cemetery purposes.  If it had been, the rights of the parties in and to the proceeds were equal; having been sold, the respective rights and interests attach to the fund.  The basis of measurement rests in the fact that the fund has taken the place of the land; and, as the rights were equal in the land, such rights so continue and become equal in the fund.  It is not a question of apportioning between lots and plots, or the laying out of streets and alleys, because the land has been sold.  The amount is fixed and certain, and the rights of the parties are equal in the premises.  Under such circumstances, a division of the money answers to each right and completely and fully protects both.

The fact that under the grant a portion or the whole of this land might have been laid out in streets and alleys, from which the plaintiff would have received nothing, is not of consequence; it is a sufficient answer to say that it was not so laid out, but, on the contrary, was sold, and money realized therefrom.  If it had been laid out in streets and alleys, no money would have been realized therefrom by the association; therefore the parties stand upon terms of equality in this respect.  In every case under the grant, when money was realized by the sale of lots and plots, the plaintiffs shared therein on equal terms.  When that was defeated, and the sale otherwise made, the money realized therefrom belonged to each of the parties equitably, in proportion as it would have been had it been produced in the manner contemplated by the grant.

In the view we have taken of the statute and the construction of the grant thereunder, the doctrine announced in Thacher v. Association, 126 N. Y. 507, 27 N. E. 1040, has no application.  Therein was attempted to be enforced an obligation taken for the loan of money.  There was no question raised as to the construction of the grant under which the land was held.  It was assumed that the real estate belonged to the association subject to no condition whatever.  Nor is it necessary to determine any question as to a vendor's lien, as such lien is not essential to the right of the plaintiff to share in the fund.

It follows from these views that judgment should be ordered providing that the plaintiff be awarded his proportional interest in one-half of the fund, with costs.

VAN BRUNT, P. J., and McLAUGHLIN and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting).  The decision in this case is based, as I understand it, upon the principle that there was attached to this conveyance, both by its terms and by the provisions of the act under which the lands were acquired, a condition subsequent, which, upon a failure to perform, might defeat the conveyance and authorize a re-entry; that by reason of the appropriation by the city of New York, under the right of eminent domain, of a portion of the prop-

erty which was conveyed to the defendant, this condition subsequent was broken, and there was thereby given to the grantors a right of re-entry which entitled these grantors to one-half of the amount paid by the city of New York as the value of the property appropriated by the city of New York for public purposes; and my difference with my associates is based upon my dissent from this proposition. The conveyance by the plaintiff and his associates to the corporation is not made a part of the record. All that we have is the statement in the submission that "on May 31, 1864, an agreement was entered into between the Woodlawn Cemetery, as party of the first part, and Absalom Peters and others, as parties of the second part, a copy of which is hereto annexed, marked 'Exhibit A.' The lands referred to in said 'Exhibit A' were duly conveyed to the Woodlawn Cemetery, as recited in the said agreement, and cotemporaneously therewith." The agreement recites that the parties named, as parties of the second part, were the owners of certain pieces or parcels of land therein specifically described, and that they had sold and conveyed the same "to the party of the first part, for cemetery purposes, under and in pursuance of an act entitled 'An act authorizing the incorporation of rural cemetery associations,' passed April 27, 1847, and the acts amendatory thereof, the consideration of the said conveyance being this agreement on the part of the party of the first part to pay for the said lands, as the purchase price thereof, one-half of the proceeds of all sales of lots or plots made from such lands," and the party of the first part, in consideration of the conveyance of the said lands by the parties of the second part, covenants that it will pay to the parties of the second part for the said lands, as the purchase price thereof, one-half of the proceeds of all sales of lots and plots made from the said lands.

We have, therefore, a statement by the parties to the controversy that the lands have been conveyed to the defendant, and as a consideration therefor the defendant had executed an agreement whereby it had agreed to pay to the grantors one-half of the proceeds of all sales of lots and plots made from the said land. I am unable to see how it can be said that from this recital of the conveyance or the statute under which the defendant was incorporated there is an indication that the conveyance was other than an absolute conveyance of the land to the defendant. Certainly, if this conveyance was made for a present consideration, it would be absolute, subject to no condition. Instead of the grantors insisting upon a present consideration, they accepted the obligation of the defendant to pay one-half of the amount that it would receive for the sale of lots and plots of the said lands. It may be that there was an implied covenant of the defendant that the property should be devoted to cemetery purposes, for in no other way could the agreement made by the defendant be carried out, and by the act under which the company was incorporated it was required to devote the property purchased for such purposes; but to say that that covenant constituted a condition subsequent, by which, upon a breach of the covenant, the title to the land should revert to the grantors, would be, I think, totally inconsistent with the declared object of the incorporation of the defendant and

the intention of the parties to the agreement and conveyance. That intent was that the defendant should sell lots or plots to those desiring them for cemetery purposes. That object would be entirely defeated if there was reserved to the grantors a right of re-entry. It is a familiar principle that a condition subsequent must not be repugnant to the nature of the estate granted to which it is annexed (6 Am. & Eng. Enc. Law [2d Ed.] 504; De Peyster v. Michaell, 6 N. Y. 492, 57 Am. Dec. 470); and such a condition subsequent as is here sought to be implied would be void, as repugnant to the estate granted. The condition annexed to a grant subject to a condition subsequent is that upon a failure of the grantee to perform the condition upon which the grant is limited, the title of the grantee to the whole property fails, and the grantors are entitled to re-enter and repossess themselves of the property as if no grant had been made. A subsequent breach of the condition would work a forfeiture of the title in the persons to whom such property had been conveyed by the grantee, and this would defeat the title of those to whom the defendant had conveyed lots or plots of land for cemetery purposes.

Assuming, however, that there was a condition subsequent, which was broken upon the appropriation of a portion of the property by the city of New York, it was the grantors or their heirs, and they only, who could take advantage of it. The election to do so could be signified by a re-entry, or some other equivalent act (6 Am. & Eng. Enc. Law [2d Ed.] 506; 1 Washb. Real Prop. p. 451), where it is said: "By the common law, the only mode of taking advantage of a breach of a condition which had the effect to defeat or work a forfeiture of an estate, was by an entry, upon the principle that it required as solemn an act to defeat as to create an estate. And when such entry had been made, the effect was to reduce the estate to the same plight, and to cause it to be held on the same terms as if the estate to which the condition was annexed, had not been granted"; and nothing short of an actual entry will serve to defeat an estate upon a condition which has been broken (Washb. Real Prop. side p. 452). This right of re-entry is a right which cannot be aliened or assigned or passed by a grant of the reversion at common law. "Such a right is not a reversion, nor a possibility of a reversion, nor is it an estate in land; it is a mere chose in action, and, when enforced, the grantor is in by the forfeiture of the condition, and not by reverter." Washb. Real Prop. 451; Van Rensselaer v. Ball, 19 N. Y. 102.

The plaintiff is not, however, one of the grantors, nor, so far as appears, is he the heir at law, assignee, or devisee of one. Nor have the grantors, their heirs or assigns, elected, by a re-entry or any equivalent act, to terminate the title of the defendant to the property conveyed. The plaintiff's claim is not that he is entitled to re-enter, but that the fee of the property vested in the defendant, and the grantors retained a lien thereon for the payment of the consideration which the defendant agreed to pay for the property, and, as this appropriation of the property by the city of New York devested the defendant of the title to the property taken, the plaintiff is entitled to the money received by the defendant from the

city of New York as the value of the property, in satisfaction of his lien for the unpaid purchase money. This position is entirely inconsistent with any right of the plaintiff, or of the grantors, to re-enter and repossess themselves of the property conveyed as upon the breach of a condition subsequent. That a corporation organized for cemetery purposes acquires the title to the property conveyed to it under the statute was settled by the court of appeals in the cases of Buffalo City Cemetery v. City of Buffalo, 46 N. Y. 503, and People v. Pratt, 129 N. Y. 68, 29 N. E. 7, and that the relation between the grantor and the defendant subsequent to the conveyance was contractual in its nature follows, I think, from the decision of the court of appeals in Thacher v. Association, 126 N. Y. 507, 27 N. E. 1040. The obligation of an association under a certificate similar in terms to that involved in this action issued for a loan of money to the association was said to be one to pay it only out of the proceeds of the money received from the sale of lots. "If it (the association) never received any money from the sales of lots, it could not be compelled to pay any upon the certificates. If it did not receive money enough from that source to pay all the certificates, it could be required only to apply such money as it received. If it received money enough to pay them all, then it was required to apply it in paying all. And, for a failure to so apply it, * * * ordinarily an action at law would be sufficient, in which the holder of a certificate could recover by showing that the defendant had received money which it ought to, but had not, applied." I cannot see that it would make any difference whether such an obligation of the corporation was issued as a consideration for the conveyance to the corporation of a plot of land, or in consideration of the payment of a sum of money. In either case, for a valuable consideration, the cemetery company had agreed to pay to the holder of the certificates one-half of all moneys that it had received from the sale of lots or plots of land, and all that the holder of the certificates could require of the corporation was that it should apply one-half of all such moneys to the payment of the certificate.

The learned counsel for the plaintiff makes no claim that the conveyance was not absolute, nor does the submission state that any such question is involved. The answer to the claim of the plaintiff that he and the other certificate holder are entitled to this money as the enforcement of a lien for the unpaid consideration money to which the grantors were entitled for the conveyance of the property seems to me to be that there is nothing due by the defendant as the consideration for the property conveyed to the defendant. The conveyance was made, as it is expressly stated in the submission, in consideration of the defendant executing the agreement, a copy of which is thereto annexed. The grantor accepted the covenant of the defendant to pay in the future one-half of the moneys that it received upon the sale of lots or plots of land for cemetery purposes, and there is no allegation that that obligation of the defendant has been fully performed. The parties to this agreement contemplated that the defendant should apply a portion of the premises granted for avenues, paths, alleys, and walks. The

proportion of the property to be so applied was not specified, and the holders of the certificates were to have no interest in such portion of the property. What they were entitled to was an application by the cemetery company of one-half of the moneys received by it from the sale of lots or plots of land laid out for burial purposes. It is not alleged that any portion of the property taken by the city was that which had been laid out for such purposes, in the proceeds of the sale of which the certificate holders had an interest. The appropriation of this portion of the land conveyed to the cemetery as a public street or avenue would be an advantage to the cemetery, as supplying it with means of access. It could certainly make no difference to the holders of these certificates whether a portion of the cemetery lands was laid out by the cemetery association as a road or avenue, or by the public for the same purpose. The appropriation of this land as a public street or avenue was not thus foreign to the purposes for which the corporation was organized, and there is nothing to show that this portion of the property taken by the city was in excess of that properly appropriated for the purpose of avenues or roads under the agreement. It is not claimed, either by the learned counsel for the plaintiff or in the prevailing opinion, that the appropriation of this land by the public in any way tended to reduce the amount of land available for sale, in the proceeds of which the plaintiff or his associates would be entitled to participate. The moiety of the proceeds of the sale of lots or plots of land reserved by the defendant is required by the statute to be laid out in maintaining the cemetery and ornamenting and beautifying the grounds, thus making it more attractive and available as a cemetery, and making its lots desirable to those needing burial plots; and the use of this money for that purpose would tend to increase the sale of lots and add to the amounts to which the plaintiff and his associates would be entitled. As the plaintiff and his associates have parted with the lands upon this agreement of the association to pay to them one-half of the profits from the sale of lots and plots of land, it seems to me that they can ask for nothing more than a strict performance of that obligation, and that, as this money in controversy was not received by the association for sale of a lot or plot of land within this provision of the contract, the plaintiff and his associates are not entitled to any portion thereof.

I think, therefore, that the defendant is entitled to judgment.