In the Matter of GEORGE W. CHAUNCEY, as Receiver in Sequestration of PINELAWN CEMETERY.

PINELAWN CEMETERY, Appellant; WILLIAM D. TYNDALL and Others, Respondents.

Second Department, April 9, 1920.

Corporations — application for appointment of receiver of cemetery corporation in judgment creditor's action — power of receiver — rights of holders of land purchase certificates and of debt certificates — application of Real Property Law, section 450, as amended by Laws of 1918, chapter 404, authorizing sale of cemetery lands — constitutional law.

An application for the appointment of a receiver under a judgment rendered in a judgment creditor's action, brought to sequestrate the property of a membership corporation pursuant to the provisions of article 6 of the General Corporation Law, should be made in the action, and is wrongfully entitled as a special proceeding.

A receiver of a cemetery corporation, organized under the former Membership Corporations Law (Laws of 1895, chap. 559), takes only such title to and powers over the property as the corporation possessed under the statute, and hence an order directing said receiver to sell so much of the lands which were acquired by the cemetery pursuant to section 50 of the former Membership Corporations Law as may be necessary to produce sufficient moneys to satisfy a judgment in a judgment creditor's action is unauthorized and a compliance therewith would not vest a marketable title in a purchaser.

Such order would violate the rights of holders of land purchase certificates and authorize the receiver to do what the corporation had no power to do.

Moreover, holders of debt certificates issued pursuant to the aforesaid statute also have a right to insist that the land be sold for cemetery purposes only, and that out of the half of the proceeds which is not payable to the land certificate holders, the directors shall set up a sinking fund for their payment.

A claim that the cemetery corporation holds an amount of land in excess of that permitted by the law of its organization is entirely irrelevant to the question as to the powers of said receiver.

Section 450 of the Real Property Law, as amended by chapter 404 of the Laws of 1918, authorizing the sale under execution to satisfy a valid judgment of a court of record of cemetery lands in which interments have not been made, does not and could not operate to deprive the holders of the land

purchase certificates of the interests which they had acquired pursuant to the statute.

Said amendment applies to lands of the cemetery, the disposition of which is not restrained by the rights of holders of land purchase certificates. Its constitutional authority extends no further.

APPEAL by Pinelawn Cemetery from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 26th day of September, 1919, in so far as it directs the receiver of said cemetery to sell so much of the lands as may be necessary to produce sufficient moneys to satisfy a judgment against said cemetery in favor of William D. Tyndall and others.

The opinion of the Special Term is reported in *Matter of Chauncey* (106 Misc. Rep. 534).

*Frederick Zorn* [*Louis Frankel, Joseph Kahn* and *L. J. Morrison* with him on the brief], for the appellant.

*John M. Gardner* [*William D. Tyndall* with him on the brief], for the respondents.

*Richmond J. Reese,* intervenor.

BLACKMAR, J.:

The Pinelawn Cemetery is a corporation organized in 1902 pursuant to the Membership Corporations Law as it then existed (Laws of 1895, chap. 559). Section 50 of the act contained the following provision:

" Such corporation may agree with a person from whom any lands are purchased for a cemetery, to pay therefor a specified share not exceeding one-half of the proceeds of all sales of the use of lots and plats made from such land, and such share shall be first applied to the payment of such purchase-money, and the residue thereof shall be applied to the preservation, improvement, and embellishment of the cemetery, and the incidental expenses of the corporation. Where lands have been so purchased, and are to be paid for as provided by this section, the prices of the use of lots

and plats fixed by the directors and in force when such purchase was made, shall not be changed, while the purchase-price remains unpaid, without the written consent of a majority in interest of the persons from whom the lands were purchased, their heirs, representatives or assigns." (Now Mem. Corp. Law [Consol. Laws, chap. 35; Laws of 1909, chap. 40], § 70.)

All the land of the cemetery, about 1,800 acres in extent, was acquired as authorized by the above-quoted provision, and certificates were issued to the vendors expressing their rights according to the terms of the statute. The receiver was appointed under a judgment rendered in a judgment creditor's action brought to sequestrate the property of the corporation pursuant to the provisions of article 6 of the General Corporation Law. The application should have been made in the action, and is wrongfully entitled as a special proceeding. Such receiver is vested with all the property, real or personal, of the corporation. (Gen. Corp. Law, §§ 106, 230, 232, as amd. by Laws of 1909, chap. 240, and Laws of 1913, chap. 766). The receiver of the Pinelawn Cemetery, therefore, was vested with the real property of the cemetery corporation; but he took such title to the property as the corporation had, and nothing more; he had such powers over the property as the corporation possessed, and nothing more. Under the agreement with the vendors expressed by the certificates issued pursuant to the statute, the corporation took title to the land for cemetery purposes only; its power and duty were limited to selling the use of lots and plats made from the land at a prescribed price, and it held the proceeds of such sales to the extent of one-half in trust for the vendors, and of the other half for the improvement and embellishment of the cemetery.

The question of the rights and liabilities of the corporation as to land acquired by the issuance of such land purchase certificates, on the one hand, and of the certificate holders on the other, was carefully considered by the Appellate Division in the first department in *Whittemore* v. *Woodlawn Cemetery* (71 App. Div. 257). In that case the court say: " It cannot be doubted in the present case but that if this association had attempted to make conveyance of these lands for other purposes than that of burial in the method specified by the

statute and by the grant, it would be in violation of the condition which was the consideration of the grant, would create a forfeiture and authorize a re-entry by the grantor or his heirs. Such conveyance would not only violate the terms of the grant, but also the terms of the statute. Good title could not be acquired by a purchaser, as he would necessarily be chargeable with notice of the condition which was attached to the grant and under which the grantor held the same. Such attempted disposition of the property might be enjoined at the instance of the grantor or any person having a beneficial interest in the fulfillment of the condition. Such beneficial interest exists in this case in favor of the grantor and the certificate holders, and is of such a character as authorized them to insist upon the performance of the same."

I do not find that this case has ever been criticized or departed from. It is referred to with approval in *Matter of Bensel* (144 App. Div. 751). In the *Whittemore Case* the land, held by the cemetery on conditions such as are presented to us in this case, was taken by eminent domain, and the judgment of the court was that the certificate holders had an interest which entitled them to a direct award of their proportionate interests in one-half of the funds realized upon the condemnation. In *Matter of Bensel*, which was also a condemnation proceeding, it was held that the certificate holders were entitled to present their claims directly to the commissioners.

Whether the cemetery holds the land on a condition subsequent, which would be broken by a conveyance for other than burial purposes pursuant to the grant and statute, or whether the certificate holders have an interest as *cestuis que trustent*, as long as the cemetery is an existing corporation for the purposes defined in the statute, just so long will the owners of the certificates have a right to require that this land be sold only in the manner and for the purposes defined in the statute and in the grant. The order made in this case violates these rights of the certificate holders, authorizes the receiver to do what the corporation had no power to do, and, in my opinion, a compliance therewith would not vest a marketable title in a purchaser.

It is also worthy of note that debt certificates under section 54 of the act have been issued to the extent of $150,000. The

act requires the directors of the cemetery corporation to " set aside from the proceeds of sales of the use of lots and plats, such sums as they may deem necessary to pay said certificates at their maturity." (See, also, Mem. Corp. Law of 1909, § 74.) I am inclined to think that the holders of these debt certificates also have a right to insist that the land be sold for cemetery purposes only, and that out of the half of the proceeds which is not payable to the land certificate holders, the directors shall set up a sinking fund for their payment.

The claim that the cemetery association holds an amount of land in excess of that permitted by the law of its organization is entirely irrelevant to the question that we are discussing. It is not clear that the holding is illegal. The eleven cemetery corporations were legally organized and the lands were conveyed to them in consideration of the issuance of the land purchase certificates. The consolidation of these corporations was accomplished pursuant to section 7 of the Membership Corporations Law, which was then chapter 559 of the Laws of 1895, as amended by chapter 439 of the Laws of 1902, which eliminated from section 7 the provision that the consolidated corporation should " have only such rights, powers and privileges " as a membership corporation formed under this chapter for the same purposes. But even if these holdings were in excess of that permitted by law, that fact would not justify the order made in this case. The receiver could give only such title as the cemetery could give. If the cemetery has no title, the receiver could give none; and if it has a title it is held subject to the rights of the holders of the land purchase certificates under section 50 of the act.

The amendment to section 450 of the Real Property Law by chapter 404 of the Laws of 1918, authorizing the sale, under execution to satisfy a valid judgment of a court of record, of cemetery lands in which interments have not been made, does not and could not operate to deprive the holders of the land purchase certificates of the interests which they had acquired pursuant to a valid statute. The amendment to the act applied to lands of the cemetery, the disposition of which is not restrained by the rights of holders of land purchase

certificates. Its constitutional authority could extend no further than this.

The order is reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.

MILLS and RICH, JJ., concur; PUTNAM, J., and KELLY, J., concur in separate memoranda, respectively.

PUTNAM, J.:

I concur. But, had this order been made in the proper proceedings, on due notice to the parties, I think it would be effectual. The rights of prior certificate holders, if entitled to priorities, are covered by the clause which directs payment to Tyndall, "after satisfying claims having priority thereto." Hence such sale would not conflict with such vested interests.

KELLY, J.:

I concur upon the ground that upon the record before this court the respondent receiver has no power to sell the lands of the corporation for the purpose mentioned in the order. It is stated in the affidavit of the petitioner respondent that the receiver was appointed by order "in a sequestration proceeding," instituted by a judgment creditor, but the order is not in the record. If the so-called order was a judgment in a judgment creditor's action for sequestration of the property of the corporation, which fact is stated in an affidavit made by the receiver, this application should have been made in the action upon due notice to all parties. The order now before the court for review is entitled in a special proceeding. I find no warrant for such procedure. I think the judgment creditor has a right in a proper action to enforce his judgment against the proceeds of sale of the lands of the cemetery corporation in which interments have not been made. (Real Prop. Law, § 450, as amd. by Laws of 1918, chap. 404.) That there are such lands is conceded. Whether such unoccupied or unused lands are subject to any rights or equities of certificate holders and to what extent they are subject to such rights cannot be determined upon the papers before the court. If there are lands, not so affected, apparently there is nothing in the way of the

judgment creditor.   But these matters must be determined in an appropriate action.   Whether the so-called action for sequestration mentioned in the receiver's affidavit is such an action cannot be determined upon the papers before the court on this proceeding.   The General Corporation Law (Art. 6) provides for such action.   It cannot be that the corporation can continue to do business with such a large holding of unused lands and refuse to pay its judgment creditors, or that such creditors must await the convenience of the certificate holders.

Order reversed, with ten dollars costs and disbursements, and motion denied, with ten dollars costs.